# IN RE: TREVOR A.

[No. 1729, September Term, 1982.]

*Decided July 15, 1983.*

492

The cause was submitted on briefs to Lowe, Bishop and Adkins, JJ.

Submitted by *Alan H. Murrell, Public Defender,* and *Julia D. Haskins, Assistant Public Defender,* for appellant.

Submitted by *Stephen H. Sachs, Attorney General, Jillyn K. Schulze, Assistant Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Dwight Price, Assistant State's Attorney for Montgomery County,* for appellee.

Bishop, J., delivered the opinion of the Court.

On April 27, 1982, a juvenile petition was filed in the District Court of Montgomery County,[1] Maryland, sitting as a Juvenile Court, alleging that Trevor A., appellant, had committed a delinquent act by performing acts which, if

---

1. The District Court has a juvenile division only in Montgomery County.

committed by an adult, would constitute the crimes of daytime housebreaking, theft of goods valued in excess of $300.00 and malicious destruction of the property of another. On August 26, 1982, an adjudicatory hearing was held and, as part of a plea agreement, appellant admitted involvement in malicious destruction of a motor vehicle and daytime housebreaking. A hearing on restitution, originally scheduled to be held at the time of disposition on September 24, 1982, was postponed, over appellant's objection, because the State had not obtained restitution affidavits from the victims.

On October 22, 1982, the rescheduled hearing date, and the 27th day after the disposition hearing date, the State was again unable to proceed because it had a restitution affidavit from only one of the victims. The court granted a continuance, again over appellant's objection.

On November 19, 1982, the restitution hearing occurred. The appellant moved to dismiss on the ground that the restitution hearing had not been held within thirty days of the disposition hearing, as required by Maryland Annotated Code, C.J. 3-829 (d) (1980 repl. vol.), and good cause had not been shown for the granting of an extension. The court denied the motion to dismiss and directed that restitution be made in the amount of $1,550.00.

Four issues are raised by the appellant:

I. In the absence of good cause, the Juvenile Court erred in holding the restitution hearing more than thirty days after the disposition hearing.

II. The State's failure to notify appellant of the claims against him deprived him of due process of law.

III. There was insufficient evidence to support the judgment of restitution.

IV. The Juvenile Court erred in failing to consider appellant's age and circumstances before entering a judgment of restitution against him.

### I.

Maryland Code, Courts and Judicial Proceedings Article, section 3-829, sub-section (d) provides:

"A restitution hearing to determine the liability of a parent or a child, or both, shall be held not later than 30 days after the disposition hearing and may be extended by the court for good cause."

Our inquiry, then, is (a) what is "good cause", (b) did the reasons for postponements in this case amount to good cause, and (c) if not, what should be the sanction?

### (a)

Clearly, good cause is to be determined within the sound discretion of the court, and the court's determination of good cause, *vel non,* will not be set aside unless that discretion has been abused. In *In Re: Robert G.,* 296 Md. 175 (1983), Judge Smith pointed out that ". . . without exception we have applied an abuse of discretion standard in reviewing action by a trial judge [in determining good cause, *vel non*]." *Webb v. Chevy Chase Cars, Inc.,* 259 Md. 284 (1970); *Hutzell·v. Boyer,* 252 Md. 227 (1969), both cited with approval in *Robert G.*

*In Re: Robert G.* decided that revealing the contents of a juvenile court record in order that the State might use the information in deciding whether to ask the death penalty for an offense committed by Robert G. was good cause under the statute prohibiting the disclosure of the contents of a juvenile court record "except upon order of court upon good cause shown." Annotated Code of Maryland 1974 (1980 repl. vol., 1982 cum. supp.), section 3-828 (b).

The *Robert G.* Court quoted with approval the following from *Stanford v. District Title Insur.* 260 Md. 550 (1971), wherein Judge Digges said:

"The decision to permit the redemption of a cause lost through delay involves subtle judgment,

requiring the trial judge to balance the individual litigant's right to ultimately have his day in court against the public's paramount interest in insuring that all citizens can obtain a prompt resolution of conflicts while they still remain current. *The primary focus of his inquiry should be on diligence and whether there has been a sufficient amount of it* during an eighteen month period of inaction for the court to affirmatively conclude that the case should not be automatically dismissed. That decision, whatever it may be, rests in the sound discretion of the trial judge and we will only invade his province on appeal in extreme cases of clear abuse. *Tydon v. Spong,* [237 Md. 107,] 110 [, 205 A.2d 220 (1964)]." 260 Md. at 555. (Emphasis added).

Judge Smith in *In Re: Robert G.* went on to point out that the Court relied upon *Stanford* in *Langrall, Muir & Nopp'r v. Gladding,* 282 Md. 397 (1978) wherein the Court, through Judge Cole, stated:

"We placed the responsibility on the trial judge to weigh and balance the rights, interests, and reasons of the parties in light of the public demand for prompt resolution of litigation when inactivity characterized a cause of action. We suggested that the trial judge, on the scene, will have a perception and understanding of the legal environment in which the case is temporarily mired. *Therefore, he was vested with the discretion to be exercised consistent with the spirit of the law while subserving the ends of justice and fairness to the parties." Id.* 400-01 (Emphasis added).

In *In Re: Robert G.* Judge Smith pointed out that Maryland's view of good cause is that stated by Black's Law Dictionary, 623 (5th ed. 1979):

"Substantial reason, one that affords a legal excuse. Legally sufficient ground or reason. Phrase 'good cause' depends upon circumstances of individ-

ual case, and finding of its existence lies largely in discretion of officer or court to which decision is committed . . . 'Good cause' is a relative and highly abstract term, and its meaning must be determined not only by verbal context of statute in which term is employed but also by context of action and procedures involved in type of case presented." (Citations omitted.)

" 'Good cause' depends upon the facts and circumstances." (Maryland Rule 741 g was being interpreted). *Id.* 296 Md. at 180 and *Taliaferro v. State,* 295 Md. 376, *cert. denied,* 103 S. Ct. 2114 (1983).

Judge Smith went on to point out that "good cause" has been equated with "substantial reason", *Kay Constr. Co. v. County Council,* 227 Md. 479 (1962), "a legal excuse", *State v. Churchill,* 82 Ariz. 375, 380, 313 P.2d 753 (1957); ". . . an adequate cause, a cause that comports with the purpose of" the statute involved, *Syrek v. California Unemployment Appeals Insurance Board,* 54 Cal.2d 519, 529, 354 P.2d 625 (1960);" . . . substantial or legal cause. . ." *Tucker v. People,* 136 Colo. 581, 586, 319 P.2d 983 (1957); that "good cause ground is provided to take. care of *unanticipated circumstances*" (Emphasis added by Hawaii Court). *State v. Estencion,* 63 Hawaii Reports 264, 267, 625 P.2d 1040 (1981), and, finally, that " 'good cause' . . . is a flexible term . . . not amenable to general rules or rigid formulas . . . its meaning must be deduced from the facts of each case in a manner that is consistent with" the fundamental purpose of the act within which the term is used. *Trexler v. Com., Unemployment Comp. Bd.,* 27 Pa. Comm. 180, 365 A.2d 1341, 1344 (1975).

The record in this case indicates that the State made no real effort to obtain the restitution affidavits except through the mail. Something more than this is required to support a finding that there had been a sufficient amount of diligence on the part of the State to comply with the rule.

Based on the facts and circumstances in this case, and the foregoing analysis of the law, we hold that the second and crucial postponement from October 22, 1982 to November 19, 1982, was not based upon "good cause" as that term has been defined by the Court of Appeals in *Robert G., supra.* We must determine, then, what sanction is appropriate for this unexcused delay.

(c)

*In re: Dewayne H.,* 290 Md. 401 (1981) addressed the sanction to be applied to a violation of Maryland Rule 915 a, which required the juvenile court to hold a disposition hearing within thirty days of adjudication. The disposition hearing was not held within the thirty days and the juvenile judge dismissed the proceedings. The Court of Appeals reversed, stating:

> "The language here is clear and unambiguous. However, its mandatory nature does not indicate the sanction to be applied nor does the sanction necessarily inure to the benefit of the juvenile. It must not be forgotten that one of the purposes of the juvenile statute as set forth in § 3-802 (a) (2) is '[t]o remove from children committing delinquent acts the taint of criminality and the consequences of criminal behavior. . . .'" Therefore, § 3-802 (b) relative to disposition provides, 'The overriding consideration in making a disposition is a program of treatment, training, and rehabilitation best suited to the physical, mental, and moral welfare of the child consistent with the public interest.' As pointed out by Judge Gilbert for the Court of Special Appeals in *In Re Appeal Misc. No. 32, Term 1975,* 29 Md. App. 701, 704, 351 A.2d 164 (1976), 'Judges in juvenile cases do not think in terms of guilt, but rather in terms of the need of the child for protection, guidance, or rehabilitation,' citing *Matter of Davis,* 17 Md. App. 98, 299 A.2d 856

(1973). In the latter case Chief Judge Orth said for the court:

'The *raison d'etre* of the Juvenile Causes Acts is that a child does not commit a crime when he commits a delinquent act and therefore is not a criminal. He is not to be punished but afforded supervision and treatment to be made aware of what is right and what is wrong so as to be amenable to the criminal laws.' [*Id.* at 104.]

Enlightenment as to the sanction to be applied for violation of a command with the word 'shall' in a situation similar to that in the case at bar is found in *State v. Hicks,* 285 Md. 310, 403 A.2d 356 (1979). The Court there said:

'There are two circumstances, however, under which dismissal is not an appropriate sanction for violation of Rule 746.

First, in addition to the requirement that, absent extraordinary cause, criminal cases at the circuit court level be tried within 120 days of the appointment or waiver of counsel or after the appearance of counsel under Rule 723, Rule 746 also requires that the act of setting this trial date be done within 30 days. Of course, as long as the case is tried within the 120-day deadline, the purpose of the rule and the statute upon which it is based, namely having the case tried promptly, will be accomplished, even if the setting of that trial date is not done within 30 days. In other words, the legislative purpose underlying § 591 and Rule 746 will in no way be advanced by holding that dismissal is the appropriate sanction for violation of the 30-day requirement. For this reason, we do distinguish between the 120-day requirement and the 30-day requirement. While the 30-day requirement is mandatory for those persons involved in setting the trial date, we hold that

dismissal of the criminal case is not an appropriate sanction for violation of the 30-day provision.' [*Id.* at 335.]

Unlike the bringing of a civil or criminal proceeding where the applicable time limits are largely in the control of the party initiating the litigation, neither party here had control over the date set for the disposition hearing. We do not have before us in this proceeding the question of what, if any, sanction other than dismissal of the proceeding might be applied. There was at least a suggestion that the juvenile judge might confer with the masters pointing out the mandatory nature of the rule. Conceivably there could be yet other remedies. The State as the representative of the general public has an interest in seeing that this juvenile is rehabilitated so that he becomes a useful citizen and in no way a menace to society. In that circumstance it simply does not follow that the proper sanction for violation of the rule is dismissal of the proceeding. The reasoning we have set forth from *Hicks* is applicable here. The juvenile judge erred." *Id.* at 405-07.

We hold that the language quoted above from *In Re: Dewayne H.* applies as well to a violation of subsection (d) of C.J. 3-829, which is less deleterious to the juvenile's interests than delayed disposition. If a sanction is to be applied, then it must be something less than dismissal.

We agree with the trial court's conclusion when confronted with possible dismissal of the petition that ". . . the property owner here is the person who is stuck with the action or the inaction or the errors that are committed . . ., and if I . . . deny the State's request for a continuance, the person hurt is the person who owns this property."

Had the court dismissed the proceedings, neither the purposes of section 3-829, to compensate the victim, *In Re: John H.* 49 Md. App. 595, 598 (1981), nor to rehabilitate the juvenile would have been carried out. *In Re: Dewayne H., supra.*

We hold, therefore, that in balancing any improper prejudice to the appellant against the victim's right to restitution and the objective of the juvenile act to rehabilitate the juvenile, dismissal is not the appropriate sanction. The reasoning we have set forth from *In Re: Dewayne H., supra,* is applicable here.

## II.

Appellant contends that he received no notice of the restitution claims against him until the restitution hearing of November 19, 1982. This, he claims, deprived him of notice and the opportunity to prepare a defense. He argues that in *In Re: James B.,* 54 Md. App. 270 (1983), we held that notifying a delinquent of a claim for damages on the day of the restitution hearing denies due process *Id.,* at 9. Although the State asserts that *In Re: James B.,* is distinguishable because there the court *sua sponte* increased the award without prior notice, the holding in that case was that James B. "was not notified on the $120.00 claim until the time of the June 4 hearing." *Id.*

The State also argues that the appellant had notice of the restitution claim from several sources before the hearing; including at the adjudication hearing.

In *In Re: James B., supra,* we pointed out that the juvenile "knew as of May 13, 1982, that the State on June 4, 1982, would attempt to prove damages in the amount of $331.55, he was not notified of the $120.00 claim until the time of the June 4 hearing." Implicit in that statement is the acknowledgement that since the juvenile knew of the $331.55 and was on notice that the State was going to attempt to recover at least that amount, notice and opportunity were afforded the juvenile as to that amount. In the case *sub judice* we have a very similar situation with reference to the entire amount since counsel for Trevor A. was put on notice (1) by the police report; (2) by information received at the adjudicatory hearing of August 26; (3) by additional infor-

mation at the hearing of September 24; (4) at the first scheduled restitution hearing of October 22, and (5) by at least general information from the petition.

We see no merit to appellant's argument on this issue.

## III.

C.J. 3-829 (c) (1) requires that the amount of restitution which is limited to $5,000.00 shall be based on fair market value. Appellant contends that one of the victims only provided evidence of replacement and sentimental value, not fair market value. Appellant properly points out that "fair market value" is defined as the price in cash which property will bring when it is offered for sale by one who desires but is not obligated to sell and is bought by one who desires but is not obligated to buy." *State Roads Commission v. Warriner,* 211 Md. 480, 485 (1957); *Lewis v. Beale,* 162 Md. 18, 23 (1932). The State responds that this Court must defer to the trial court on findings of fact and must affirm any legitimate verdict, disposition or judgment emanating from that fact-finding. *Wenger v. Wenger,* 42 Md. App. 596, 597 (1979). We cannot reverse the trial court's findings of fact unless our review of the record discloses that the trial court was clearly erroneous in making such fact-finding. Maryland Rule 1086.

It is clear from the record that the trial court not only recognized that it must apply fair market value, but did apply fair market value. The lower court properly considered the owner's testimony as to replacement value and as to the age and condition of each item, *Checkpoint v. Sweeney,* 250 Md. 251, 253 (1963), *see Cofflin v. State,* 230 Md. 139, 142-43 (1962), and then took judicial notice of appreciation or depreciation of each item in arriving at what it considered to be fair market value. *Perkins v. Jackson,* 188 Md. 616, 634 (1947); 1 *Jones on Evidence,* § 2:34 (6th ed. 1972). *See Shipley v. State,* 220 Md. 463, 467 (1959); *Kares v. State,* 14 Md. App. 366, 368 (1968); *Vucci v. State,* 13 Md. App. 694, 701-02 (1971). Although we may not agree with the amounts

that the trial court placed on each and every item, we cannot hold that the trial court was clearly erroneous.

## IV.

C.J. 3-829 (b) provides:

> "Considering the age and circumstances of a child, the court may order the child to make restitution to the wronged party personally."

Appellant contends that the trial court violated this section by not taking into account appellant's age and circumstances when requiring that the appellant

> "[W]ill at some point pay [his] parents back in some fashion or another, either for working around the house or out of [his] own earnings when [he reaches] the point that [he] can earn some money or out of [his] own allowance[s] salaries. . . I have to say savings if [he has] any. But certainly it would be my thought that [he] would be at some point compensating the parents. The Court is going to enter a judgment jointly and severally as to . . . the . . . respondent and his parents."

Given the fact that the juvenile was 17 years of age at the time of the offense, and given the nature of the offense, we see absolutely no merit at all to this argument.

> *Judgment affirmed.*
> *Costs to be paid by appellant.*