466 A.2d 546

**Robert Joseph DORSEY**

v.

**STATE of Maryland.**

**No. 1883, Sept. Term, 1982.**

Court of Special Appeals of Maryland.

Oct. 14, 1983.

Michael R. Malloy, Asst. Public Defender, with whom was Alan H. Murrell, Public Defender on the brief, for appellant.

Philip M. Andrews, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen., William R. Hymes, State's Atty., for Howard County, and Martin J. McNamara, Asst. State's Atty., for Howard County on the brief, for appellee.

Submitted before BISHOP, ADKINS and ALPERT, JJ.

ADKINS, Judge.

Robert Joseph Dorsey's appeal from a conviction for constructive criminal contempt of court and a sentence of imprisonment for six months presents two issues:

1.  Should the contempt proceedings have been dismissed because a signed show cause order was not served on him; and

2.  Was his waiver of jury trial of the contempt case improper?

*Facts*

On June 24, 1982, a Howard County grand jury indicted Dorsey for forgery. Later, he was asked to give handwriting exemplars to the police. When he declined to do so, the Circuit Court for Howard County, on August 11, 1982, signed an order directing him to provide the exemplars. Dorsey refused. The State filed a motion to hold Dorsey in contempt of court. On October 12, 1982, Judge Robert F. Fischer signed an order commanding Dorsey to show cause why he should not be held in contempt for refusal to obey the August 11 order. For reasons not disclosed by the record, Judge Fischer "dismissed" that motion on October 25. That same day, he signed another order for Dorsey to show cause why he should not be held in contempt with respect to the August 11 order.

On November 19, the contempt proceedings came on for hearing before Judge Guy Cicone. Apparently, Judge Cicone had reservations about the service of the motion for contempt or the show cause order. In any case, it seems he directed the State to file a new contempt motion. It did. Judge Cicone then signed a new show cause order. In open court, a copy of the motion and an unsigned copy of the order were delivered to Dorsey. Judge Cicone told him he had 15 days within which to respond to the show cause order.

On December 16, 1982, the contempt matter came on for hearing before Judge Thomas Nissel. Dorsey moved to dismiss the proceedings because he had never been served with a signed show cause order. Judge Nissel denied the motion to dismiss, and thereupon inquired of counsel for Dorsey whether he wished a jury trial. The assistant state's attorney advised that the State would not seek a penalty of incarceration in excess of six months, in the event Dorsey was found guilty of contempt. Defense counsel said he would accept a court trial if the judge agreed that he would not impose a sentence in excess of six months. The judge agreed and the trial proceeded.

At the trial, the State proved that on August 11, the court had ordered Dorsey to furnish the handwriting exemplars and that he had refused to do so. The defense offered no evidence. Judge Nissel found Dorsey in contempt and sentenced him to confinement for six months, concurrent with a sentence Dorsey was then serving. The judge further provided that Dorsey could purge himself by furnishing handwriting exemplars. Instead, Dorsey appealed.

### The Motion to Dismiss

Despite the fact that the contempt order contained a provision permitting Dorsey to purge himself of contempt, the proceedings below involved a charge of constructive criminal contempt of court. *State v. Roll and Scholl,* 267 Md. 714, 298 A.2d 867 (1973). That being so, the proceedings below were governed by Md.Rule P4. Quoting § b.1.(c) of that rule ("[t]he show cause order shall be served upon the defendant . . .") Dorsey says that its language mandates that the original signed show cause order should have been served upon him. Since, he argues, this was not done, the contempt proceedings should have been dismissed.

A literal reading of the portion of the rule quoted by Dorsey suggests that it might be construed to support Dorsey's contention that the original show cause order should have been served upon him. But even so, it does not necessarily follow that dismissal is the sanction for that

omission. *Cf. In Re Trevor A.,* 55 Md.App. 491, 462 A.2d 1245 (1983). Here, an order was signed by Judge Cicone; a copy was given to Dorsey in open court; Dorsey was orally advised of the requirement that he respond within 15 days. The court had subject-matter jurisdiction to hear the contempt case. *See Dorsey v. State,* 295 Md. 217, 454 A.2d 353 (1983). Dorsey clearly had notice of what he was charged with (particularly in light of the October proceedings) and what he was expected to do by way of answering those charges.

But we need not decide whether the original order had to be served on Dorsey in this case. This is because of other provisions of Md.Rule P4 b.1.(c). The pertinent portion of the rule reads:

> The show cause order shall be served upon the defendant pursuant to Rule 104 (Service of Process—Generally) unless the defendant has appeared as a party in the action in which the contempt is charged, in which case service shall be in the manner prescribed by the court.

The contempt proceeding was filed in the criminal case against Dorsey. Dorsey had obviously appeared as a party in that case; on July 7, 1982, he entered a plea of not guilty, and thereafter filed various motions and was the subject of motions filed by the State. In that situation, the rule provides that "service shall be in the manner prescribed by the court."

The record shows that the original show cause order, signed by Judge Cicone on November 19, bears a notation that it was issued and hand delivered to the defendant in open court on that date per Judge Cicone. In other words, Judge Cicone directed that the order be served on Dorsey by delivery of a copy to him in open court. Under these circumstances, we think that delivery of the unsigned copy of the order to Dorsey complied with the rule. The motion to dismiss was properly denied.

## Waiver of Right to Jury Trial

■ It may well be that the brief discussion before the December 16 contempt trial did not satisfy the requirements of Md.Rule 735, or of the Constitution with respect to knowing and intelligent waiver of Dorsey's right to a jury trial. *See Suggs v. State,* 52 Md.App. 287, 449 A.2d 424 (1982). *See also Countess v. State,* 286 Md. 444, 408 A.2d 1302 (1979) (dealing with an earlier version of the rule) but that avails Dorsey naught unless he was indeed constitutionally entitled to a jury trial.

In *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) the Supreme Court held that the Sixth Amendment right to a jury trial in criminal cases was applicable to state prosecutions by virtue of the Due Process clause of the Fourteenth Amendment. It recognized "that there is a category of petty crimes or offenses which is not subject to the Sixth Amendment jury trial provisions," 391 U.S. at 159, 88 S.Ct. at 1452, but in *Duncan* it did not have to "settle ... the exact location of the line between petty offenses and serious crimes." *Id.* at 162, 88 S.Ct. at 1454. Nor did the Court expressly "settle" the "location" of that line in *Bloom v. Illinois,* 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), in which it held the Sixth Amendment jury trial right applicable to a state criminal contempt proceeding.

With respect to federal criminal contempt proceedings, the constitutional line was firmly established in *Frank v. United States,* 395 U.S. 147, 89 S.Ct. 1503, 23 L.Ed.2d 162 (1969). There, the court adopted as the constitutional dividing line between petty and serious offenses the Congressional definition of a petty offense as a misdemeanor "the penalty for which does not exceed imprisonment for a period of six months or more or a fine of not more than $500 or both...." 18 USC 1.

That same line was drawn as to state criminal contempt proceedings in *Taylor v. Hayes,* 418 U.S. 488, 495, 94 S.Ct. 2697, 2701, 41 L.Ed.2d 897 (1974): "our cases hold that petty contempt like other petty criminal cases may be tried with-

out a jury and that contempt of court is a petty offense when the penalty actually imposed does not exceed six months or a longer penalty has not been expressly authorized by statute." The Court went on to explain that "in the absence of legislative authorization of serious penalties for contempt, a state may choose to try any contempt without a jury if it determines not to impose a sentence longer than six months." *Id.* at 496, 94 S.Ct. at 2702.

In light of these decisions, Dorsey concedes, as he must, that from the federal constitutional viewpoint, he had no right to a jury trial; his sentence was not "longer than six months"—it was precisely six months. But he asserts that this court in *Roll and Scholl v. State,* 15 Md.App. 31, 288 A.2d 605 (1971), *modified on other grounds and aff'd.,* 267 Md. 714, 298 A.2d 867 (1973), and the Court of Appeals in *State v. Roll and Scholl, supra,* have applied a different and more liberal standard under the jury trial provision of Art. 21 of the Maryland Declaration of Rights. In support of this argument, he notes that by way of dictum in our *Roll and Scholl* we said:

> We observe that in criminal contempts, both direct and constructive, where the sentence imposed is not petty, that is the sentence imposed is 6 months or more, ... the alleged contemnor is entitled to a trial by jury.... 15 Md.App. at 49, 288 A.2d 605.

In its *Roll and Scholl,* the Court of Appeals, also by way of dictum, said: "The right to a jury trial is guaranteed if the offense is serious, *i.e.* may be punished by imprisonment of 6 months or more." 267 Md. at 730, n. 11, 298 A.2d 867. Since Dorsey received a sentence of precisely six months, he claims that the quoted language demonstrates he was entitled to a jury trial under the Maryland Constitution.

■ We recognize, of course, that while states may not circumscribe federal constitutional rights, they may grant greater rights under their own constitutions, provided those greater rights do not impinge upon federal constitutional rights. *Mills v. Rogers,* 457 U.S. 291, 102 S.Ct. 2442, 73 L.Ed.2d 16 (1982). *See also Attorney General v. Waldron,*

289 Md. 683, 426 A.2d 929 (1981); and *compare Hornbeck v. Somerset County Board of Education,* 295 Md. 597, 458 A.2d 758 (1983) and *State v. McKay,* 280 Md. 558, 375 A.2d 228 (1977), in which the concept was at least implicitly recognized. *See generally,* W. Brennan, *State Constitutions and the Protection of Individual Rights,* 90 Harv.L.Rev. 489 (1977); and H. Linde, *First Things First: Rediscovering the States' Bills of Rights,* 9 U.Balt.L.Rev. 379 (1980).

There is no doubt, then, that Maryland courts have the power to construe Art. 21 of the Declaration of Rights as granting a broader right to jury trial than does the federal constitution. The narrow question presented in this case is whether that was done in the two *Roll and Scholl* cases. The answer is that it was not.

Aside from the fact that the *Roll and Scholl* quotations relied on by Dorsey are dicta, it is perfectly plain that both cases were discussing the federal constitutional jury trial right. Both this court and the Court of Appeals supported the language in question by citations to federal cases interpreting the United States Constitution. Neither case makes any reference to Art. 21 of the Declaration of Rights in this connection. It is inconceivable that a Maryland court would undertake a construction of the Maryland Constitution without even mentioning the document.

Thus, it appears that both *Roll and Scholl* cases discussed only the federal constitutional right to jury trial in contempt cases. It also appears that the extent of this right was stated with a certain lack of precision in those cases, as is also true of *Pearson v. State,* 28 Md.App. 464, 487, 347 A.2d 239 (1975) (quoting our *Roll and Scholl* ). But we note that in an earlier case, we had stated the federal right accurately. *In Re Martin,* 10 Md.App. 385, 387, 270 A.2d 674 (1970), *cert. den.* 403 U.S. 955, 91 S.Ct. 2292, 29 L.Ed.2d 865 (1971). And in *Robinson v. State,* 19 Md.App. 20, 308 A.2d 712 (1973) we expressly noted (and rejected) the *Roll and Scholl* formulation:

The trial judge imposed a sentence of six months in jail, the absolute *maximum* which he could have given the

appellant without affording him a jury trial. *In Re Martin,* 10 Md.App. 385 [270 A.2d 674]. . . . In that case, we stated that a petty offense, not requiring a jury trial, is one "punishable *by not more than six months imprisonment* and a $500.00 fine". . . . Subsequently, in *Roll v. State,* supra, at 49, we said by way of a dictum that a non-petty offense is one "where the sentence imposed *is 6 months or more*". . . . The Court of Appeals repeated that same dictum in *State v. Roll, supra* [15 Md.App.], at 877, n. 11 [288 A.2d 605]. Upon further reflection, we adhere to our original statement in *In Re Martin,* supra. Thus, the six months sentence imposed by the trial judge in this case without affording a jury trial went to the outer limit of, but still fell within, his sentencing discretion. A sentence of six months and one day, however, could not have been meted out without extending appellant his right to a jury trial. . . . 19 Md.App. at 29, n. 3, 308 A.2d 712 [Emphasis in original; citations to federal cases omitted].

*See also Smith v. State,* 17 Md.App. 217, 229, 301 A.2d 54 (1973) (not a contempt case).

Since its *Roll and Scholl,* the Court of Appeals has also stated with precision the federal constitutional jury trial rule in criminal contempt cases. *Wilkins v. State,* 293 Md. 335, 338, 444 A.2d 445 (1982). We conclude, therefore, that the *Roll and Scholl* dicta in question (1) were inaccurate statements of the extent of the federal constitutional right to jury trial, and (2) in no way attempted to establish, in contempt cases, a Maryland constitutional right to jury trial different from the federal right.

Dorsey has not addressed the general question of whether the Maryland Constitution affords a broader jury trial right in criminal contempt cases than does the United States Constitution, and we have not considered it. In this regard, we hold only that *Roll and Scholl* did not purport to establish any such Maryland right. Since Dorsey's contention of a Maryland constitutional right based on those cases is ill-founded, and since he had no federal constitutional right to a

jury trial, his claim that his waiver of that non-existence right was improper must also fall.

JUDGMENT AFFIRMED. APPELLANT TO PAY THE COSTS.