468 A.2d 656

**Kenneth Edward LEE**

v.

**STATE of Maryland.**

**No. 242, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

Dec. 13, 1983.

614

John L. Kopolow, Asst. Public Defender, with whom was Alan H. Murrell, Public Defender of Maryland on brief, for appellant.

Bernard A. Penner, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen. of Maryland, Sandra A. O'Connor, State's Atty. for Baltimore County and C. Eugene Schmidt, Asst. State's Atty. for Baltimore County on brief, for appellee.

Argued before WEANT, BISHOP and ALPERT, JJ.

ALPERT, Judge.

We hold that a defendant in a civil contempt proceeding[1] has no right to a jury trial and cannot be sentenced to incarceration unless he has been afforded the right to have counsel present closing argument.

On September 7, 1979, a jury in the Circuit Court for Baltimore County found Kenneth Edward Lee, appellant, guilty of the criminal non-support of his children in violation of Md.Ann.Code, art. 27, § 88(b) (1957, 1982 Repl.Vol.). He was sentenced to three years to the Division of Corrections. This sentence was immediately suspended in favor of three years of supervised probation, and, as a condition of probation, appellant was ordered to pay $20.00 per week per child

---

1. As with all civil contempts, the defendant must be afforded the right to avoid incarceration by purging himself of the contempt. See discussion Part I, *infra.*

as child support. In an unreported per curiam opinion, appellant's conviction was affirmed by a three-judge panel of this Court. *Lee v. State,* No. 1278, September Term, 1979, filed May 22, 1980.

On October 15, 1979, appellant was charged with violation of probation because he allegedly failed to make the ordered payments. According to the docket entries, on May 12, 1981, appellant was found "not guilty" of the alleged probation violation. Thereafter, on July 1, 1981 and February 2, 1982, the State filed petitions seeking to have the appellant attached for contempt for allegedly not obeying the order for child support. As these petitions were not served, a similar petition was filed on February 25, 1982, directing the appellant to show cause why he should not be attached for contempt for failing to pay child support.

The matter came on for trial on December 20, 1982, and the appellant entered a formal plea of not guilty to the charge of contempt. Defense counsel asked appellant if he wanted a jury trial, but before receiving a response the court stated, "He is not entitled to a jury trial on a contempt." Trial proceeded without a jury.

Anita Carol Lee, appellant's former wife, testified that despite the 1979 conviction and order to pay child support, the defendant consistently refused and failed to pay. Anita Vesely of the Support Division of the Circuit Court for Baltimore County related that the September 7, 1979 order directed the appellant to pay $20.00 per week per child, plus a 2% service charge: a total of $40.80 per week; that the appellant did not respond to delinquency notices; that appellant had not made any weekly payments; and that an arrearage in the amount of $7,058.40 had accrued.

Testifying in his own defense, appellant stated that he was self-employed in the delivery business earning $730.00 per month plus $244.00 received for his services as a minister with the Bible Presbyterian Church. According to appellant, $166 of that $244 was donated to the church as a "tithe," leaving him a net of $84 per month. He indicated expenses as follows:

$300.00  per month for gasoline

$ 60.00  per month for tires due to a bent frame on car

$ 8.00  per month for automobile insurance

$ 19.50  per week for rental of equipment used in his delivery business

$150.00  per month for food

$350.00  per month for rent

$ 95.00  per month for oil heat, electricity and telephone.

Additionally, appellant listed outstanding debts in excess of $3,000.00. While testifying that he was financially unable to make payments of $20.00 per week per child, at one point appellant stated that

The issue is not whether or not I will take care of my children, because I have maintained this house so that there would be room for the children, and I am prepared to take care of the children, I have always been prepared, in fact I have, to take care of them all day, I've tried to schedule my work so I can be available.

Later, indicating a different reason why payments weren't made, the appellant stated

[A]fter the civil court ordered me to make payments, I went back to the next highest church court, the Presbytery, and I asked them for advice as to what I should do. They said that, in my wife's current state of desertion from my household, I should not make any payments through her. But if I were able to, I am willing to do almost anything to work this out.

Appellant was asked by his attorney:

If you were to make payments directly to your wife, or even to her through the Department of Support and Custody, would this reflect in any way upon your religious beliefs?

He answered, "It would be a direct act of defiance to God."

When reminded that he gave $166.00 a month to the church which was approximately the amount he was ordered to pay for child support, his response to the prosecutor was:

Well, I am prepared to, in any way that honors the Lord, to take care of my children, as I always have before my wife took them away. But the first obligation is to the Lord, the first tenth goes to God.

After further cross-examination, the prosecutor asked the appellant:

Are you willing to pay this time to the Support and Custody Division to support, help support your children?

Appellant responded, "It's not my will that counts."

At the close of all the evidence, the following colloquy took place:

THE COURT: Does anybody want to be heard?

[DEFENSE COUNSEL]: I am going to renew my motion for judgment of acquittal.

THE COURT: Overruled.

[DEFENSE COUNSEL]: I would like to be heard.

MR. SCHMIDT [ASSISTANT STATE'S ATTORNEY]: Not at this time.

THE COURT: I have no problem with it. He is clearly guilty of Judge Haile's order of September 7, 1979. And I notice from the Court of Appeals opinion he is a member of the Tennessee Bar. He has made no effort to pay anything, even though his income has been very low. He said he made $730 monthly since August, and before that time maybe he made three or four hundred dollars less. But he has made no effort to pay one cent. And the trouble about it, Mr. McGarvey, is that he has some debts, but he has his obligations in the wrong place; the Court should come first, because the rest of the debtors can't put him in jail, but I can.

[DEFENSE COUNSEL]: Well, Your Honor, I think under all the circumstances—

THE COURT: I think maybe, if he wants a trustee, he ought to designate the Support and Custody Division of Baltimore County as trustee. So my sentence is very simple: It will be two years in the Baltimore County Jail. I will recommend work release. And this contempt can be

purged in two ways, and I will recite them to him now, but the payment of $7,058.48 is payable through the Probation Department of Baltimore County—he is a lawyer, he knows I have an obligation to enforce the law, that is my obligation—secondly, by the payment of $40 a week plus $20 a week on the arrearage, which is found to be $7,058.48, through the Probation Department; and he can put it down in his own mind, that is the trustee.

He has a right to take an appeal to the Court of Special Appeals, that request has to be made to the Court in writing, to do that he has to submit it to the Court in writing and request an appeal. And since this is a criminal case, I have the right to modify or change this sentence within 90 days; that request has to be made in writing. I think he has the right to a sentence review on this, too, because the sentence is two years or more, and that request has to be made to the Court in writing. That request would cause a three-judge panel to convene, but it would not include myself. They can lower it but they can also increase it, the sentence. I think that is sufficient.

Appellant, after noting a timely appeal, contends that:

   I.  He was denied his constitutional right to elect a trial by jury.

  II.  He was denied his constitutional right to closing argument through counsel.

 III.  He was erroneously found guilty of civil contempt and incarcerated therefor because the State failed to prove his ability to comply with the order for child support and the purging provision of this sentence.

 IV.  The trial court erred in concluding that appellant's failure to make child support payments was contemptuous where the uncontraverted evidence was that the children lived with their mother who had rebuffed all his attempts to contact them.

  V.  The prosecution for criminal contempt was barred by principles of double jeopardy.

Because we hold that the appellant was indeed denied his constitutional right to have his counsel make closing argument, we shall reverse and remand for a new trial. Since discussion of the other four issues raised would be helpful to the trial court on remand, we shall also address those issues.

## I.

Appellant contends that "if the proceedings below were for criminal contempt," he was denied the fundamental right to a jury trial. He further asserts that the trial judge viewed the proceedings as criminal because a plea of not guilty was submitted and after judgment was pronounced and sentence imposed, appellant was advised of his right to seek review by a three-judge panel, a right only available to one convicted of a crime. See Md.Ann.Code, art. 27, § 645JA(a). Before we can decide whether the appellant was entitled to a jury trial, we must first determine whether he was being tried for criminal or civil contempt. In *State v. Roll & Scholl,* 267 Md. 714, 298 A.2d 867 (1973), the late Judge Dudley Digges delivered the opinion for the Court of Appeals and stated:

In this State, the nature of the proceeding is determined before the time for imposing punishment is reached. While this Court has previously quoted language from Supreme Court cases that have dealt with the problem of categorizing contempts, in *Winter v. Crowley,* 245 Md. 313, 226 A.2d 304 (1967), Judge Barnes, for this Court, delineated the basic criteria applicable in this State for determining if a proceeding was for civil contempt. The five factors which generally point to a civil contempt are:

'(1) the complainant is usually a private person as opposed to the State; (2) the contempt proceeding is entitled in the original action and filed as a continuation thereof as opposed to a separate and independent action; (3) holding the defendant in contempt affords relief to a private party; (4) the relief requested is primarily for the benefit of the complainant; (5) the acts complained of do not of themselves constitute

crimes or conduct by the defendant so wilful or contumelious that the court is impelled to act on its own motion.'

*Id.* at 729–30, 298 A.2d 867. We apply the five factor test:

### (1)

Although the State is the nominal complainant, the actual complainant is Anita Carol Lee, who was seeking child support for her two children from her ex-husband, the appellant.

### (2)

The original action was criminal in nature and styling. The subject contempt proceeding carries the same caption as the original action as it was filed as a continuation of the criminal non-support action instead of a separate and independent action.

### (3)

The contempt citation affords relief to private parties, *i.e.,* the two children of the appellant.

### (4)

While the State is the nominal complainant and manifestly the enforcement of the criminal laws inure to the benefit of the entire citizenry of the State, the primary beneficiaries are the two children of the appellant.

### (5)

■ Although the act of non-support may constitute a crime, we take judicial notice of the fact that this type of proceeding is initiated by the State's Attorney's Office at the request of the Department of Social Services or an aggrieved spouse or other custodian of a child to whom support is due. Trial courts are not impelled to act *sua sponte* in these cases.

■ Thus, applying the five-factor test, we conclude that the proceedings were indeed civil in nature.

Relying on *Wilkins v. State,* 293 Md. 335, 444 A.2d 445 (1983), appellant argues that the Court of Appeals explicitly

recognized that a criminal contemnor must constitutionally be afforded the opportunity for a jury trial in cases of "serious" contempt, *i.e.,* those entailing sentences in excess of 6 months. For a thorough discussion of the right to a jury trial in criminal contempt cases, see *Dorsey v. State,* 56 Md.App. 54, 466 A.2d 546 (1983).

*Wilkins* is clearly inapposite since here we are dealing with a civil contemnor and although the sentence imposed was two years to the Baltimore County Jail, it could be immediately purged by either payment of the arrearage or payment of the original child support plus weekly part payments on the arrearage. He carried the keys to his prison in his own pocket. "To turn the key and exit the prison the contemnor [had] but to comply with the court order." *Herd v. State,* 37 Md.App. 362, 364, 377 A.2d 574 (1977).

In a civil contempt the sanction, as in this case, is coercive and must allow for purging, but if it were criminal, it is punitive and must be determinate. *Roll & Scholl, supra* 267 Md. at 728, 298 A.2d 867. In Maryland because the sentence in a case of civil contempt could not properly be "determinate," it would not even arguably be a "serious" offense which might require a jury trial. The Supreme Court has held that where a contempt is civil, it carries with it no right to a jury trial. "The conditional nature of the imprisonment—based entirely upon the contemnor's continued defiance—justifies holding civil contempt proceedings absent the safeguards of [a] . . . jury." *Shillitani v. U.S.,* 384 U.S. 364, 371, 86 S.Ct. 1531, 1536, 16 L.Ed.2d 622, 627 (1966).[2] *Accord, Cheff v. Schnackenburg,* 384 U.S. 373, 377, 86 S.Ct. 1523, 1524, 16 L.Ed.2d 629 (1966). *See also* Am. Jur.2d Jury § 54, 55. For a synopsis of the Supreme Court's

---

**2.** In *Shillitani* the Supreme Court based its classification (civil vs. criminal) solely on the nature of the sanction imposed against the contemnor. Although the Court of Appeals in *Roll and Scholl, supra* 267 Md. at 729, 298 A.2d 867, rejected the *Shillitani* test for determining the nature of the contempt, we believe the Supreme Court's reasoning on the jury trial issue to be sound.

views as to right to jury trial in contempt proceedings, see, Annot., 45 L.Ed.2d 815, 830–32 (1976). There is no right to a jury trial in civil contempt proceedings.

## II.

Although the trial court invited closing argument, before defense counsel could make that closing argument the trial court announced its verdict of guilty. While the Court of Appeals has held that a defendant has the constitutional right to have counsel make a proper closing argument on the evidence and applicable law in a criminal case, *Spence v. State,* 296 Md. 416, 419, 463 A.2d 808 (1983); *Yopps v. State,* 228 Md. 204, 178 A.2d 879 (1962), our appellate courts have not yet dealt with that issue in a civil proceeding.

In *Rutherford v. Rutherford,* 296 Md. 347, 363, 464 A.2d 228 (1983), Judge Eldridge stated for the Court:

[U]nder the Due Process Clause of the Fourteenth Amendment and Article 24 of the Maryland Declaration of Rights, an indigent defendant in a civil contempt proceeding cannot be sentenced to incarceration unless he has been afforded the right to appointed counsel.

Thus, it is firmly established that a defendant is entitled to representation by counsel in a civil contempt proceeding if he is to be sentenced to a period of incarceration.

A week after the *Rutherford* decision, the Court of Appeals in *Spence, supra,* was faced with a situation where a trial court rendered a verdict of guilty before defense counsel presented closing argument. There the Court held that striking the verdict and permitting argument thereafter was not sufficient to comply with defendant's right to have his counsel make a closing argument before verdict. Judge Cole, in delivering the opinion for a majority of the Court, stated:

We conclude, therefore, that here the trial court violated the defendant's constitutional right to the assistance of counsel when it rendered its verdict before counsel had presented closing argument and that striking the verdict

and permitting argument thereafter did not cure the defect.

296 Md. at 423, 463 A.2d 808.

A synthesis of the holdings in *Rutherford* and *Spence* leads us to but one logical conclusion: A defendant in a civil contempt proceeding may not be sentenced to a period of incarceration unless his counsel is afforded the right to make a closing argument. This right accrues under the due process clause of the Fourteenth Amendment to the United States Constitution and under Article 24 of the Maryland Declaration of Rights and not under the Sixth Amendment to the United States Constitution, since we are here dealing with a civil proceeding and not a criminal proceeding.

Other courts have recognized the absolute right to have attorneys present closing arguments in civil proceedings.

In *Fuhrman v. Fuhrman,* 254 N.W.2d 97 (N.D.1977), an appeal from a judgment of divorce, the trial court announced its decision prior to final argument. The Supreme Court of North Dakota decided that denial of this right required reversal.

> We now hold that litigants in civil nonjury cases (and, of course, in all criminal and jury cases as well) have a right to have their attorneys make a final argument. This right may be limited as to time and may be limited as to content so as to preclude improper argument, but it cannot be totally denied. In civil nonjury cases, the right may be waived.

*Id.* at 101 (footnotes omitted).

*See also Aladdin Oil Burner Corp. v. Morton,* 117 N.J.L. 260, 187 A. 350 (1936), a contract case in which the trial court's denial of the right of final argument was considered to be an

> arbitrary deprivation of an absolute right, inherent in our system of trial procedure, rather than the exercise of a discretionary authority, reviewable only in the event of abuse—the right, ... to present an analysis of the evidence and the inferences claimed to be deducible there-

from to the trier of the facts, be that tribunal the judge or a jury.

*Id.*

■ Appellee, citing Maryland Rule 1085 and *Covington v. State,* 282 Md. 540, 386 A.2d 336 (1978), contends that "because appellant's counsel did not object to the trial court's failure to allow time for closing, appellant has failed to preserve the issue for appellate review." This precise argument was presented to and rejected by us in *William Harvey Jones v. State,* 55 Md.App. 695, 466 A.2d 55 (1983).

> *Spence* [, *supra,* ] . . . precludes us from exercising Rule 1085 discretion not to decide the unpreserved issue.
>
> The three judge minority dissenting through Chief Judge Murphy, after fully discussing the *Covington* [, *supra,*] failure-to-object-result, as well as the [*State v.*] *Hutchinson* [, 260 Md. 227, 271 A.2d 641 (1970) ] judicial competence presumption, pointed out in *Spence* that the majority had fashioned a *per se* rule.
>
> > 'Today, the Court prescribes an inflexible and absolute rule that, notwithstanding the lack of timely objection, where a trial judge in a non-jury case inadvertently renders a premature verdict, which is later stricken, he is thereafter incapable, in any and all circumstances, of fairly considering closing argument.' 463 A.2d at 818.
>
> When the Chief Judge joined by two distinguished members of that seven judge Court offer that as their interpretation of the holding, we can only assume that had the majority intended a less rigid rule, it would have clearly so stated.

Relying on *Jones,* we reject appellee's Rule 1085 argument.

### III.

Relying on *Elzey v. Elzey,* 291 Md. 369, 435 A.2d 445 (1981), appellant argues that the court below made no finding that at the time of trial appellant's income enabled him to make weekly payments of $40.80 or to pay the full arrearage of $7,050.48. Although the trial court made no specific mathematical computation on the record, it could

have concluded that the appellant's total income was $974.00 per month (this includes the amount donated to the church as "tithe") and that some of his living or business expenses were unnecessarily high or that they should wherever possible have been deferred in favor of child support. We must give due regard to the trial court's ability to judge the credibility of the appellant. Maryland Rule 1086. The trial court might have disbelieved that part of the testimony of the appellant where he stated his expenses.

But, if the appellant had neither the money nor the ability to pay at the time of the alleged contempt, then he should not have been imprisoned. *Elzey,* 291 Md. at 374, 435 A.2d 445. Unlike the trial court in *Elzey,* the trial judge in the case *sub judice* did not expressly find that the appellant had become unable to pay the arrearages as well as the continuing weekly support payments. Apparently, the court implicitly found that appellant could have made the weekly payments. The trial court, if it so finds on remand, should explicitly so state on the record.

Appellant contends that even on work release, he could not comply with the present order to pay $60 per week ($40 currently and $20 on the arrearages) or $240 per month in that business expenses of $596 monthly would be subtracted from an income of $814 per month, leaving only $218 per month remaining for child support payments. Again, appellant forgets that he must be just before he may be generous.

## IV.

■ Appellant posits that he is discharged of the obligation to make child support payments because his former wife left him without justifiable cause and has prevented him from contacting the children. We find this argument to be absurd. His proper remedy if he is denied visitation is to file a petition seeking visitation. If visitation were already authorized in the divorce proceedings, appellant could seek a contempt citation. In no event, however, does he have the right to withhold child support payments. *See Stancill v. Stancill,* 286 Md. 530, 539, 408 A.2d 1030 (1979).

## V.

Finally, appellant asserts that "the contempt proceeding below relitigated unvarying facts proved against the government at the May 12, 1981 probation revocation hearing" and that "the proof required at both proceedings was the same." As the appellant has filed neither a transcript nor a record extract of the probation revocation proceedings, we have no way of determining whether the proof at both proceedings was the same. We note, however, that nearly 18 months had transpired from the time of the revocation hearing to the time of the contempt hearing. The testimony indicated that nothing ever had been paid for child support. Thus, if nothing more, there might have been new facts showing 78 additional weeks of non-payment and also a corresponding accumulation of the arrearages. The appellant's double jeopardy/collateral estoppel argument is without merit.

JUDGMENT REVERSED AND CASE REMANDED FOR NEW TRIAL; COSTS TO BE PAID BY BALTIMORE COUNTY.