664 A.2d 439

**In re DON Mc.**

**No. 1915, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Sept. 6, 1995.

300

Gina M. Serra, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Mary Ann Ince, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Sandra A. O'Connor, State's Atty. for Baltimore County, Towson, on the brief), for appellee.

Submitted Before MOYLAN, BLOOM and DAVIS, JJ.

DAVIS, Judge.

This is an appeal from a judgment of the Circuit Court for Baltimore County, sitting as a juvenile court. Appellant, Don Mc., was charged with stealing an automobile. For insurance purposes, the car was totally destroyed in an accident. Fol-

lowing a hearing on December 17, 1993, a juvenile master found that appellant committed the theft as charged and thereafter found that appellant was delinquent. At a subsequent hearing on February 16, 1994, the master ordered that appellant (or his mother) pay $4,800 in restitution to the car owner's insurance carrier, *Government Employees'* Insurance Company (GEICO).

Appellant presents two questions for our review, which we modestly rephrase as follows:

I. Did the juvenile court exceed its authority by postponing the restitution hearing after the State indicated that it was dismissing the claim for restitution on behalf of GEICO?

II. Did the juvenile court err in ordering restitution without ascertaining appellant's ability to pay and by ignoring the remarks by appellant's mother regarding her inability to pay?

## FACTS

Appellant, Don Mc., age fifteen, was tried as a juvenile for the theft of a 1993 Ford Escort belonging to Wayne Komar. On October 25, 1993, a Baltimore County police officer responded to a call involving a personal injury automobile accident in the front yard of 6808 North Charles Street. Appellant, the driver of the car, had been travelling southbound at a high rate of speed when he lost control on a curve. The car left the road, striking several pine trees and a fence. During questioning by police, appellant stated that he got the car from a friend. Further investigation revealed that the ignition had been "popped" and that the car was reported as stolen. As a result of the accident, the car was a total loss. GEICO reimbursed Mr. Komar for the value of the car, minus a $200 deductible.

A juvenile petition was filed, and the case proceeded to an adjudicatory hearing. The parties submitted an agreed statement of facts. On December 17, 1993, the juvenile master found that appellant had committed the theft as

charged. The master thereafter found that appellant was delinquent and committed him to the Department of Juvenile Services for placement. Appellant and his mother, Wanda Mc., were ordered to pay $200 in restitution to Mr. Komar. During the hearing, the master asked Mr. Komar who his insurance carrier was, and the following exchange took place:

[THE MASTER]: How much did they pay out?

MR. [K]OMAR: $9,450.00.

[THE MASTER]: What about that Mrs. Barranco? ... That's $4,800.00 to your client and his mother.

MS. BARRANCO [representing appellant]: I have not been advised by the State that GEICO was seeking that restitution in—

[THE MASTER]: The State never notifies them.

MS. BARRANCO: If they wish to be a party, then we would request a restitution hearing to have them be present.

Thereafter, a restitution hearing was set for January 19, 1994. At the start of the hearing, the State's Attorney declared:

Your honor, GEICO is the insured party in this matter. And they have not appeared here today. *So I'm going to, you know, I guess dismiss the action as far as GEICO....*

(Emphasis added.) The State's Attorney explained that he did not document whether he contacted GEICO, but also stated that he routinely called insured parties "when [he] found out who they were." The master continued:

[THE MASTER]: Okay. Well, how about if I just assess $5,000.00 there and let's see where the chips go?

MS. BARRANCO: Well, your honor ... No one from GEICO is here.

[THE MASTER]: I don't really care.

MS. BARRANCO: Well, I think my client—

[THE MASTER]: Then I'll extend the hearing. You get hold of the insurance carrier, continue it.

\* \* \* \* \* \*

*I'm not paying any more money.* I don't think you people understand—

\* \* \* \* \* \*

You see? The parents and the children are going to start paying the insurance carriers at least up to the statutory limit.

(Emphasis added). When the hearing was continued on February 16, 1994, a representative from GEICO was present. After the master indicated his intent to order restitution in the amount of $4,800.00, counsel for appellant renewed her objection to continuation of the hearing. The master stated:

But if the victims don't tell the carrier, then the carrier is not here. And it just seems to me to be patiently [sic] unfair that people like Mr. [Mc] go out and steal these cars and total them, *and my insurance rates* along with all these other drivers in here are going up because the carrier is paying out all this money.[1]

(Emphasis added). The master then asked appellant's mother, Wanda Mc., what her position was. The following colloquy took place:

MRS. [Mc]: I cannot afford it.

[THE MASTER]: Ma'am, that may be. I'm not saying you've got to pay it out at one time. I'm sure that GEICO would be—

Mrs. [Mc]: I'm on a fixed income.

[THE MASTER]: Well ma'am, that may be, but they're entitled to their money.... They're the victim in this case.

After further discussion, the master found that GEICO had paid $8,366.25 for damages suffered when appellant totalled the Escort. The master ordered appellant and his mother to pay GEICO $4,800.00 in restitution. Thereafter, a chancellor

---

**1.** We are troubled by the master's expressed concern with the impact of juvenile auto theft on his own insurance rates. The master's concerns are certainly legitimate, but a juvenile proceeding is not an appropriate forum. A master, like a judge, should strive to promote public confidence in the impartiality of the judicial system.

overruled the exceptions filed by appellant. This appeal followed.

## LEGAL ANALYSIS

### I

Under § 3–829 of the Courts and Judicial Proceedings article, a juvenile court has discretion to "enter a judgment of restitution against the parent of a child, the child, or both" where two unambiguous criteria are met. First, the court must find that the child has committed the "delinquent act" alleged in the juvenile petition. The statute does *not* require a finding that the juvenile is delinquent and in need of assistance or rehabilitation. Second, the court must also find that the juvenile has damaged or destroyed the property of the victim while committing the delinquent act, or that the victim has suffered some other compensable loss. *See In re Herbert B.*, 303 Md. 419, 426–27, 494 A.2d 680 (1985); Md. Code Ann., Cts. & Jud.Proc. (CJP) § 3–829(a) (1995 Repl.Vol.). The court may order restitution on behalf of the victim, any governmental entity, or "[a] third party payor, including an insurer, that has made payment to the victim...." CJP § 3–829(a)(2). An order of restitution is limited to the lesser of $5,000 or the actual dollar amount of the loss. CJP § 3–829(c).

■ Appellant contends that the master exceeded his authority by continuing the hearing after the State "dismissed" the action on behalf of GEICO.[2] Appellant explains:

> Like a nolle prosequi, when the state indicates a desire to dismiss an action, the end result is that the proceedings are terminated. In fact, in juvenile cases resulting in the possibility of a restitution award, it is the state's attorney who determines whether to file the victim's petition for

---

**2.** The State contends that appellant failed to object, and that the issue was waived. In reviewing the transcript from the January 19 hearing, we note that counsel for appellant apparently *attempted* to object, but was repeatedly interrupted by the master. Consequently, we shall treat the issue as if a proper objection were made.

restitution. *In re: Zephrin D.*, 69 Md.App. 755, 761, 519 A.2d 806 (1987). Thus, it is the state, and not a trial court, who controls the fate of a restitution claim.

We find no merit in that argument. Although the State has a certain amount of control over the fate of juvenile proceedings, the State does not have the power to "dismiss" a juvenile petition or a claim for restitution once the court has found that a delinquent act was committed.

▇ As a general rule, a juvenile court has no jurisdiction to order restitution unless the State has filed a juvenile petition. *See Hart v. Bull*, 69 Md.App. 229, 232–34, 516 A.2d 1043 (1986). In the first instance, the intake officer "has substantial discretion in determining whether to file a petition regarding a particular child." *In re Keith G*, 325 Md. 538, 544, 601 A.2d 1107 (1992) (quoting *In re Laurence T.*, 285 Md. 621, 625–26, 403 A.2d 1256 (1979)). Pursuant to CJP § 3–812(d), the State's Attorney, "upon assigning the reasons, may dismiss in open court a petition alleging delinquency."

▇ The entry by the State of a nol pros of a criminal charge after the defendant has been found guilty, operates as an acquittal. *See Hooper v. State*, 293 Md. 162, 169 fn. 3, 443 A.2d 86 (1982). Similarly in juvenile proceedings, once the juvenile court finds that a delinquent act has been committed, the State's authority to dismiss the petition comes to an end. Thereafter, the decision to order restitution lies within the sound discretion of the juvenile court.

▇ In effect, an order for restitution is part of the disposition imposed after a finding that the juvenile committed a delinquent act. The State may make a recommendation, but it has no authority to determine whether a particular disposition will be imposed. Thus, when the State's Attorney declared that he was going to "dismiss the action" as far as GEICO was concerned, those words were of no legal effect, and the master could properly order appellant and his mother to pay restitution to GEICO.

During the adjudicatory hearing held on December 17, 1993, the master found that appellant had committed a delinquent act, that appellant destroyed property belonging to the victim, and that GEICO reimbursed the victim for his loss. Thus, the only unresolved question was the amount of compensation that GEICO paid to Mr. Komar. At appellant's request, a restitution hearing was held on January 19, 1994. Although GEICO did not appear at the January 19 hearing, the State's Attorney could not remember whether GEICO had been summoned, and he could not produce documentation to show that GEICO had been summoned. By the master's order, the restitution hearing was continued until February 16, 1994 so that GEICO might be present.

■ The pertinent statute provides, in part, that a restitution hearing "shall be held not later than 30 days after the disposition hearing and may be extended by the court for good cause." CJP § 3–829(d). GEICO's absence from the January 19 hearing did not constitute good cause to continue the hearing, and the master's decision to continue the hearing was a clear abuse of discretion. *See In re Trevor A.*, 55 Md.App. 491, 496–97, 462 A.2d 1245, *cert. granted*, 297 Md. 419, 466 A.2d 1291 (1983), *cert. dismissed*, 299 Md. 428, 474 A.2d 207 (1984) (holding that the State's failure to obtain restitution affidavits did not constitute good cause to continue a restitution hearing).

■ We are troubled by the master's apparent disregard for the time limit contained in CJP § 3–829(d). Nevertheless, the statute provides no sanction for failure to hold a restitution hearing within thirty days after the disposition hearing. In *Trevor A.*, 55 Md.App. at 500, 462 A.2d 1245, we held that dismissal of the juvenile petition is not an appropriate sanction. *See also State v. One 1980 Harley Davidson Motorcycle*, 303 Md. 154, 161–62, 492 A.2d 896 (1985) (citing *Trevor A.* and similar cases with approval). In reaching that conclusion, we observed that a decision to dismiss the petition would defeat the purposes of CJP § 3–829, which include both the rehabilitation of the delinquent and the full or partial compensation of

the victim. *Trevor A.,* 55 Md.App. at 499–500, 462 A.2d 1245. For the same reasons, we hold that an order of restitution will not be reversed for failure to conduct a restitution hearing within thirty days.

## II

 Appellant also contends that the juvenile court erred by ordering restitution without ascertaining appellant's ability to pay and by ignoring the concerns expressed by appellant's mother, who stated that she was living on a "fixed income." In reviewing the record, we observe that no objection was made during the restitution hearing. Similarly, the issue was not raised in appellant's exceptions, and was not addressed during hearings held on those exceptions. Thus, the issue has not been preserved for our review. MD.RULE 8–131(a). *Cf. Bell v. State,* 66 Md.App. 294, 303, 503 A.2d 1351 (1986) (citing *Brecker v. State,* 304 Md. 36, 497 A.2d 479 (1985)) (where restitution is ordered as part of a criminal sentence, lack of a timely objection to the court's failure to inquire into the ability to pay constitutes a waiver of the issue).

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**