515 A.2d 775

**Jacob FRAIDIN, et al.**

v.

**Leona M. STUTZ.**

**No. 111, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

Oct. 10, 1986.

Millard S. Rubenstein, Baltimore, for appellant.

John P. Nugent, Jr., Baltimore, for appellee.

Argued before BLOOM, ROSALYN B. BELL and KAR-WACKI, JJ.

ROSALYN B. BELL, Judge.

The authority of the Circuit Court for Baltimore County to transfer a case to the United States Bankruptcy Court is the primary issue in this appeal. Jacob Fraidin appeals from a default judgment entered against him in the state court contending:

— the Circuit Court for Baltimore County had no jurisdiction to try the case after transferring it to the United States Bankruptcy Court; and

— the trial court abused its discretion by granting a default judgment as sanction for failure to properly complete discovery under oath.

Leona Stutz filed suit in the Circuit Court for Baltimore County against a number of defendants, including Jacob Fraidin. The declaration alleged that Fraidin and others jointly and individually conspired to defraud her of her home. Stutz alleged she had been the victim of questionable loan dealings with the defendants.

On September 21, 1983, after the declaration was filed, one of the defendants, Albert Blank, filed a voluntary petition for bankruptcy pursuant to Chapter 7 in the United States Bankruptcy Court. Subsequently, on October 4, 1983, counsel for Stutz, by letter, advised the circuit court of the bankruptcy proceeding and the provision of the Bankruptcy Code which automatically stays certain other pending proceedings involving the bankrupt and requested

that the circuit court file be forwarded to the Clerk of the United States Bankruptcy Court.[1]  Several days later, the circuit court ordered the case "transferred" to the United States Bankruptcy Court for further proceedings.  The Clerk of the Circuit Court, however, did not physically transfer the case file to the bankruptcy court.  On or about January 13, 1984, the bankruptcy court denied Blank a discharge in bankruptcy.  The docket entries indicate that the circuit court received correspondence from the bankruptcy court on April 30, 1984 notifying the court that the automatic stay had been lifted.

In December of 1984, a hearing was held in the circuit court on several motions [2] which had been filed in that court subsequent to the denial of discharge date.  During the circuit court hearing, the court noted the earlier order of transfer to the bankruptcy court.  The motions judge decided he was going to enforce that order but gave counsel three days to file a motion to strike the earlier transfer order, ostensibly because of the denial of the discharge and termination of the stay.  In January of 1985, the circuit court granted Stutz's motion to rescind the order transferring the case to the United States Bankruptcy Court, *nunc pro tunc.*  In June of that year Fraidin filed a motion opposing the rescission order.  That motion was denied.

Prior to this time, in November, 1984, Stutz proceeded with discovery in the circuit court.  Counsel made a number of attempts to secure responses by Fraidin.  Based on Fraidin's repeated failure to file answers to interrogatories and produce requested documents, the court granted a default judgment against him as the sanction for failing to comply with discovery requests.

---

1.  The automatic stay related only to Blank.  The record does not disclose why Stutz selected the option of seeking to transfer the entire case rather than proceeding against Fraidin and the remaining defendants in the circuit court.

2.  The motions were not directly related to the issues on appeal.

The case came on for trial. At the conclusion, the court instructed the jury to return a verdict for compensatory damages against Fraidin based on the default judgment. The jury returned a verdict against him for $17,161.20 in compensatory damages.

## JURISDICTION

We will first consider whether the circuit court in fact had jurisdiction to proceed with the case to judgment. Appellant contends that once a court divests itself of jurisdiction, it cannot reconsider and reassert jurisdiction. While that may be so, as we see it that is not the issue presented by this appeal. The circuit court never divested itself of jurisdiction of the case *sub judice* in favor of the bankruptcy court. Let us explain.

An automatic stay of judicial proceedings ensues once a debtor files a voluntary petition in the bankruptcy court. 11 U.S.C. § 362(a) (1982 & Supp. II 1984). This automatic stay acts to protect the debtor from his creditors and applies to all prior and pending judicial proceedings involving creditors other than government entities. The Code states:

"§ 362 **Automatic stay.**

(a) [A] petition filed ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation ... of a judicial ... proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title."

The automatic stay continues, with certain exceptions not applicable here, until the property in question is "no longer property of the estate; and (2) ... until the earliest of—(A) the time the case is closed; (B) the time the case is dismissed; or (C) if the case is a case under chapter 7 of this title concerning an individual ... the time a discharge

is granted or denied." § 362(c)(1)–(2). Although a stay may halt other judicial proceedings involving the bankrupt, it does not divest the court wherein those proceedings are pending of jurisdiction. *See In re Related Asbestos Cases,* 23 B.R. 523, 526 (N.D.Cal.1982); 1A *Collier on Bankruptcy* ¶ 11.07 (14th ed. 1978).

■ Parties to the state court action could, however, seek removal of their case. Appellee sought to remove this case to the bankruptcy court for reasons not appearing in the record. The Code provision that was effective when the circuit court attempted to "transfer" the case to the bankruptcy court in October of 1983 provided that subject to certain exceptions, any claim which was pending in a state court could be removed to the bankruptcy court for the district where the civil action was pending. 28 U.S.C. § 1478(a) (1982).[3]

Bankruptcy Rule 9027, also in effect in October of 1983, governs the procedure for removal. The party seeking removal from the state court files an application for removal in the bankruptcy court for the district within which the action is pending, serves one copy of the removal application on the parties to the removal action and files another copy with the clerk of the court from which the action is removed. Bankruptcy Rule 9027(a), (c), (d). The application for removal filed by one not the trustee, debtor or debtor-in-possession, or the United States must be accompa-

---

**3.** Under 28 U.S.C. § 1478 (1982) the bankruptcy courts were separate from the federal district courts and were vested with original jurisdiction over removed cases. The Bankruptcy Amendments and Federal Judgeship Act of 1984, effective July 10, 1984, created a new system of administration. Bankruptcy courts are now no longer independent courts with original jurisdiction, but are units of the federal district courts. While 28 U.S.C. § 1478 does purport to vest the bankruptcy courts with original jurisdiction, this has been largely discounted as contrary to the purpose of the 1984 Act. *In re Schuler,* 45 B.R. 684 (Bankr.D.N.D.1985); *In re Long,* 43 B.R. 692 (Bankr.N.D.Ohio 1984). Removal must now be to the United States District Court with referral where appropriate to the bankruptcy court. 28 U.S.C. § 1452(a) (Supp. III 1985) (removal) and 28 U.S.C. § 157 (Supp. II 1984 and Supp. III 1985) (referral).

nied by a bond for the payment of costs. Bankruptcy Rule 9027(b). The Rule further provides a means by which a case may be remanded by the bankruptcy court to the state court following the initial removal. Bankruptcy Rule 9027(e).

What occurred in the case *sub judice* bears no relationship to the procedure required by Bankruptcy Rule 9027. Counsel for appellee notified the circuit court that Blank had filed a Chapter 7 proceeding and requested that the file of the case be sent to the bankruptcy court. No notice of the request for removal of the case was sent to any of the parties. The record does not indicate that any application for removal was ever filed in any court. Nor does the record indicate that appellee filed a bond. Instead, the trial judge in the circuit court *sua sponte* "transferred" the case to the United States Bankruptcy Court. Thereafter, it appears counsel for appellee assumed removal had occurred because he filed a petition with the bankruptcy court seeking removal of the case *sub judice* from the bankruptcy court to the United States District Court.[4] The record again does not indicate whether the bankruptcy court or the district court ever entered an order removing the instant case to the district court.

Based on the failure to follow the proper procedure, the basic question in this case reduces itself to a very narrow one. What was the effect of the circuit court's "transfer" of the case to the United States Bankruptcy Court? The answer is pellucid. It was of no effect.

■ As an initial matter, no state court has jurisdiction to transfer any case to a federal court based on principles of federalism. Moreover, 28 U.S.C. § 1478(a) (1982), like 28

---

**4.** In December of 1983, counsel for appellee sought removal from the bankruptcy court to the United States District Court apparently in order to secure a jury trial. Whether Bankruptcy Rule 9015 which overrides the prohibition against conducting jury trials in bankruptcy court is still valid has not been definitively decided. *Compare In re Proehl,* 36 B.R. 86 (W.D.Va.1984), *with In re Martin Baker Well Drilling, Inc.,* 36 B.R. 154 (Bankr.D.Me.1983).

U.S.C. § 1452(a) (Supp. III 1985), certainly did not vest a state court with jurisdiction to transfer a pending state case to either the federal district court or to the bankruptcy court. Rather, the removal statute merely creates a right in any party to the state court proceeding, including the plaintiff, to commence proceedings to remove. *In re General Oil Distributors, Inc.*, 21 B.R. 888, 893–94 (Bankr.E.D. N.Y.1982).

■ Thus, in the case *sub judice*, the circuit court's order of "transfer" did not rectify the parties' failure to comply with the Bankruptcy Rule. The circuit court, faced with an order in its own case which indicated a "transfer" to a federal court, thereafter entered an order rescinding the earlier order *nunc pro tunc.* This corrected the obvious technical impediment to proceeding with the case. Since the automatic stay had been terminated with the denial of the discharge in bankruptcy, the case could and did properly proceed to trial in the circuit court.

## DISCOVERY SANCTIONS

Appellant also contends the circuit court entered a default judgment against him in error as a sanction for violating the discovery rules. Specifically, he asserts:

— that Rule 2–422 does not require production of documents under oath;

— that he complied with the substance if not the form of discovery and sanctions are reserved for attempts to prevent disclosure of information; and

— that he was unrepresented by counsel.[5]

---

**5.** The events that dealt with the sanctions imposed on appellant during the discovery process in the circuit court took place after the automatic stay was lifted. Appellant argues that the court lacked jurisdiction to enter the default judgment; however, since we are holding that the circuit court could not unilaterally transfer jurisdiction of this matter and since the stay was terminated prior to the default, the circuit court had the power to administer sanctions.

■ Appellant admits, as he must, that trial judges have broad discretion in imposing sanctions in discovery matters. Disregard of the court's discovery rules and procedures is appropriately subject to sanctions within the court's discretion. *Broadwater v. Arch,* 267 Md. 329, 336, 297 A.2d 671 (1972); *Evans v. Howard,* 256 Md. 155, 160–61, 259 A.2d 528 (1969). We hold there was no abuse of that discretion in the case *sub judice.*

■ Appellant failed on numerous occasions to comply with discovery. Appellee served interrogatories on appellant in October of 1984 and scheduled his deposition for November. Appellee, by way of Request for Production of Documents, requested appellant to bring all related documents to the deposition. Appellant stated on two occasions under oath during the deposition that he had not provided all the documents relating to the loans. Appellant also failed to file answers to the interrogatories on the date they were due.

Appellee requested by letter in December, 1984 that appellant comply with discovery. In January, appellee filed a Motion for Order Compelling Discovery. Appellee communicated with appellant by letter in February and again in March regarding the importance of answering the interrogatories and producing the requested documents. On March 27, 1985, appellee filed a Motion for Sanctions. The court imposed sanctions of attorney's fees and prohibited appellant from opposing the claim, but provided the order was void if appellant answered the interrogatories by May 10, 1985. On June 3 appellant did file Answers to Interrogatories but they were unsworn and not in accordance with the rules. He did not then or at any later time respond to the Request for Production of Documents. Appellee again sought sanctions based on the response to this interrogatory:

> "*Interrogatory* 11. List all papers which have been in existence at any time in relation to your acquisition of an interest in 955 Circle Drive."

*"Answer* 11.   Given at 11/15/84 Deposition."

This response was not under oath.   Appellant never stated under oath that he in fact did produce all the requested documentation.

In imposing the default judgment, the court's order stated: "Defendant, Jacob Fraidin, has *repeatedly failed to respond under oath* to Plaintiff's request for production of documents as well as other court ordered discovery...." (Emphasis in original.)   Appellant contends, and we agree, that a response to the request for production of documents is not required to be under oath.   *See* Rule 2–422(c).   Here, however, appellant failed over a period of time to comply with discovery and the court's orders.   Sanction was entered for his repeated violations rather than merely for failing to respond under oath.   Appellant was given numerous opportunities to accede to the requests for answers to interrogatories and for production of documents.   He had ample opportunity to follow the rules, and failed to comply with each opportunity.   Therefore, he cannot now successfully contend that he complied with the substance of discovery if not the form.

While we might have concern with appellant's excuse that he was unrepresented by counsel, we note that he was represented when his answers to interrogatories first fell due.   Moreover, the record indicates that appellant has considerable legal experience.   Although appellant contended he was unable to answer interrogatories in a timely and proper manner or to respond to production of document requests, he had no difficulty filing numerous other pleadings, including answers to appellee's motions for sanctions and his opposition to appellee's Motion for Summary Judgment.   He also quickly secured counsel once the court entered a default judgment against him.

The problems in discovery abuse have become of nationwide concern.   *See Remarks of Chief Justice Burger before the American Law Institute* (May 15, 1984), excerpts *reprinted in* Burger, *Abuses of Discovery,* Trial, September

1984, at 18–20. The trial judge took steps to assure the orderly progress of discovery in this case by first imposing a penalty and when faced with flagrant continuing disregard of the court's rules and procedure, imposing the ultimate sanction—a default judgment. We hold the court's efforts were appropriate.

JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.