667 A.2d 1013

**W.D. CURRAN & ASSOCIATES, INC.**

**v.**

**CHENG–SHUM ENTERPRISES, INC.**

**No. 415, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

Dec. 5, 1995.

Daniel J. Mellin (Hillman, Brown & Darrow, P.A., on the brief), Annapolis, for appellant.

Charles J. Muskin, Glen Burnie, for appellee.

Argued before WILNER, C.J., and FISCHER and DAVIS, JJ.

DAVIS, Judge.

W.D. Curran & Associates, Inc. appeals from an order of the Circuit Court for Baltimore County that denied appellant's

Motion to Extend Writ of Execution and granted appellee's, Cheng–Shum Enterprises, Inc.'s, Motion to Release Levy. Three questions are presented on this appeal, the first of which is a threshold matter. We restate the issues as follows:

I. Did the automatic bankruptcy stay, which arose as a result of appellee filing a petition for bankruptcy relief, preclude appellant from filing its *second* Motion to Extend Writ of Execution in the circuit court?

II. Did the levy automatically terminate upon the expiration of the 120–day extension period contained in the circuit court's August 10, 1994 order extending the writ of execution?

III. If the levy did not automatically expire, did the circuit court abuse its discretion in determining that appellant failed to show good cause for extending the levy further?

As we shall explain more fully below, we are compelled to reverse the judgment of the circuit court.

## FACTS

Following a bench trial on October 19, 1993, in a breach of contract claim in the Circuit Court for Baltimore County (Kahl, J.), appellant obtained a judgment and a mechanic's lien against appellee for $46,021.88. This Court affirmed the circuit court's judgment in an unreported opinion filed March 16, 1995. *Cheng–Shum Enter. v. W.D. Curran & Assocs.,* 104 Md.App. 759 and 770 (Md.Ct.Spec.App.1995).

During the pendency of that appeal, appellant began procedures to collect its judgment. Pursuant to appellant's Request for Writ of Execution, the Sheriff of Baltimore County levied upon appellee's personal property on December 9, 1993. The parties state that the sheriff's schedule appraised the value of this personal property at approximately $15,000. The sale of the property was postponed pursuant to an agreement between the parties reached in late January, 1994. Under this agreement, appellee promised to pay appellant an initial sum of $10,000, followed by subsequent monthly payments of

$2,500 until the judgment was satisfied. Appellee paid the initial $10,000, but apparently failed to make any monthly payments.

Much of what transpired next revolves around MARYLAND RULE 2–643(c)(6), which allows a judgment debtor to request the circuit court to release property from a levy where the levy has existed for 120 days without sale of the property, unless the circuit court for good cause extends the time. On March 8, 1994, approximately ninety days after the sheriff levied on the property, in an effort to preserve the levy, appellant filed a Motion to Extend Writ of Execution (hereinafter, "first Motion to Extend") beyond the 120–day period contained in MARYLAND RULE 2–643(c)(6). On March 11, 1994, however, appellee filed a bankruptcy petition for Chapter 11 relief in the United States Bankruptcy Court for the District of Maryland.

Appellant then turned to the bankruptcy court for relief, filing a motion requesting relief from the automatic stay so that appellant could proceed on the Writ of Execution. The record is unclear regarding when this motion was filed. In any event, after a hearing on July 8, 1994, the bankruptcy court (Derby, J.) ultimately issued an order on July 19, 1994, modifying the automatic stay so that appellant "may present to the Circuit Court of Maryland for Baltimore County its Motion to Extend Writ Of Execution and request the relief granted therein[.]" (hereinafter, "order modifying stay"). The bankruptcy court, however, denied appellant's request for permission to sell the property under the Writ of Execution.

Accordingly, appellant obtained an order from the circuit court (Kahl, J.) dated August 10, 1994, ordering "that the Writ of Execution levied in the above captioned matter shall be extended beyond the 120 day period contained in Rule 2–643(c)., *for an additional 120 days from the [e]xpiration thereof.*" (Emphasis added) [1] (hereinafter, "order extending

---

1. The italicized language was not in the proposed order submitted to the judge but was added by him.

writ of execution"). Because the date of the levy was December 9, 1993, by our calculations the 120–day period contained in Rule 2–643(c)(6) ended on April 8, 1994, and the "additional 120 days from the [e]xpiration thereof" ended on August 6, 1994. Thus, whether Judge Kahl realized or intended it, by the time he signed the order extending writ of execution, the additional 120–day period had already expired.[2]

On November 7, 1994, in another attempt to preserve the levy, appellant filed a second Motion to Extend Writ of Execution (hereinafter, "second Motion to Extend"). The record reveals that appellant did not obtain further authorization from the bankruptcy court allowing appellant to file this motion. In response, appellee filed a motion to release the property from the levy on the ground that "[t]he original writ issued by [the circuit court] has expired by operation of law and by specific order of [the circuit court]" and that appellant "failed to have the levied property sold within 120 days and has failed to demonstrate good cause." On February 2, 1995, another judge of the circuit court held a hearing on these motions. At the conclusion of argument from counsel, the circuit court stated the following:

> The Court is not satisfied that there is good cause shown or that the Rule [2–643] is that clear or for that matter Judge Kahl's order [extending writ of execution] is specific on that issue. But having read [*Joshi v. Kaplan, Freeland, Schwartz & Bloomberg, P.C.*, 72 Md.App. 694, 532 A.2d 712 (1987) ], and heard argument of Counsel on this issue, the Court will deny [appellant's] Motion to Extend the Writ of Execution, . . . and will grant [appellee's] Motion to Release the Levy . . .

---

**2.** In its brief, appellee calculates that the 120–day extension period contained in Judge Kahl's order extending writ of execution ended on August 12, 1994, two days after Judge Kahl signed the order. We are unsure how appellee arrived at this date, but note, however, that the minor discrepancy between our calculation and appellee's calculation is not material to our holding in this appeal.

On the following day, the circuit court issued a written order to the same effect. From this order, appellant appeals to this Court.

## LEGAL ANALYSIS

### I

■ As a threshold matter, appellee argues that appellant was not authorized to file a *second* Motion to Extend.[3] The thrust of appellee's argument seems to be that while appellant was authorized to file the first Motion to Extend by virtue of the bankruptcy court's order modifying stay, appellant was not authorized to file the second Motion to Extend because appellant failed to obtain further authorization from the bankruptcy court. In other words, the order modifying the automatic stay was not continuing in nature such that appellant could repeatedly file motions to extend the writ of execution, but rather allowed appellant to file one motion one time.

■ To determine whether appellant was authorized to file the second Motion to Extend, it is first necessary to understand the nature of an "automatic stay." An automatic stay arises upon the filing of a bankruptcy petition under the U.S. Bankruptcy Code. 11 U.S.C. § 362 (1995). "The effect of the automatic stay on a pending suit in another court is to suspend that suit; it does not cause that suit to be dismissed." *Nnoli v. Nnoli,* 101 Md.App. 243, 250, 646 A.2d 1021 (1994). The stay, however, does not suspend every aspect of a pending suit. *Id.* A stay halts other judicial proceedings involving the bankrupt, but does not divest the court wherein those proceedings are pending of jurisdiction. *Fraidin v. Stutz,* 68 Md.App. 693, 698, 515 A.2d 775 (1986). Thus, in most cases, an order from the bankruptcy court is necessary before a creditor may take post-bankruptcy petition action against a

---

3. Although this argument is only alluded to in appellant's brief, it was raised in appellee's motion to release the property from the levy and during the February 2, 1995 motions hearing. As a result, we shall review it. MARYLAND RULE 8–131(a).

debtor in a non-bankruptcy judicial proceeding. Section § 362(d) empowers bankruptcy courts to issue such orders as follows: "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay ... such as by terminating, annulling, modifying, or conditioning such stay ..."

With these principles in mind, we next address whether the existence of the automatic stay and the fact that appellant never obtained further authorization from the bankruptcy court to file the second Motion to Extend precluded appellant from filing that motion. In view of what appellant was attempting to accomplish by its second Motion to Extend, we hold that the automatic stay did not preclude appellant from filing that motion, and that appellant did not require further authorization from the bankruptcy court to do so.[4]

Appellant's purpose for filing the motions to extend was unmistakably clear—appellant did not want to jeopardize the levy on the property, but rather desired to preserve its position as a lien creditor with respect to the property. This is evidenced by the statements contained in appellant's motions to extend. In the first Motion to Extend, appellant explained that the sheriff levied upon the personal property of appellee, and that seizure of the property was about to occur. Appellant then stated that it agreed to halt efforts to execute upon the levy because of the agreement reached between the parties. According to appellant, had appellee not promised to make the agreed upon monthly payments, appellant would have fully executed upon the levy and seized the assets. Appellant then explains that the writ "would normally expire 120 days after the levy but because of [appellee's] actions, [appellant] has not pursued execution on the levy" and "wishes to reseize the levied assets which, for good cause, have not previously been seized."

---

4. Thus, we need not address whether the terms of the bankruptcy court's order modifying stay allowed appellant to file the second Motion to Extend.

In the second Motion to Extend, appellant explained that appellee "has filed for bankruptcy thereby preventing [appellant] from causing the property to be sold under the levy." Appellant further stated that "[b]ecause [appellee] has filed for bankruptcy generally postponing the entirety of this case, and [appellee] has appealed this case to the Court of Special Appeals, and tne appeal will not be resolved until the summer of 1995 at the earliest, [appellant] suggests that good cause has been shown to extend the levy generally" beyond the 120-day period contained in MARYLAND RULE 2–643(c).

We have no doubt that appellant sought only to preserve its position as a lien creditor. In this regard, appellant proceeded much the same way as a judgment creditor would under MARYLAND RULE 2–625 (1995) to renew a judgment before it expires after the twelve-year period contained in that rule. Ignoring for the moment whether the levy would have naturally expired after 120 days had appellant not filed the motions to extend[5] (as would a money judgment after twelve years without being renewed by the judgment holder), it is clear that appellant intended merely to prolong the life of the levy.

Such steps, in our opinion, were not taken in violation of the automatic stay. Nor was appellant required to obtain further authorization from the bankruptcy court to modify the automatic stay to allow the filing of the second Motion to Extend. Although we have found no Maryland appellate court cases addressing this issue, courts in other jurisdictions support this view.

In *Barber v. Emporium Partnership,* 800 P.2d 795, 797 (Utah 1990), the Supreme Court of Utah addressed whether an automatic bankruptcy stay precludes a judgment creditor from renewing its judgment before the judgment lapses under state law. The court held that an "action to renew a judgment

---

5. We shall address this issue in detail in the next section of this opinion.

does not violate the automatic stay provisions of the bankruptcy code." The court explained:

A renewal is not an attempt to enforce, collect, or expand the original judgment. When the [judgment creditors] sought to renew their judgment against the [judgment debtor], they were only trying to maintain the status quo by preventing the judgment's lapse under the statute of limitations. The original judgment against the [judgment debtor] was final before the [judgment debtor] went into bankruptcy. Renewing the judgment did not affect the [judgment debtor's] assets or its ability to fairly deal with all its creditors and therefore was not automatically stayed.

*Id.* The Utah supreme court cited cases from other courts supporting this interpretation of the automatic stay provisions. *See, e.g., Barnett v. Lewis,* 170 Cal.App.3d 1079, 1088 n. 11, 217 Cal.Rptr. 80 (1985) (automatic stay inapplicable to actions to renew judgments because by such actions there is not a direct attempt to collect a debt); *Marine Midland Bank v. Herriott,* 10 Mass.App.Ct. 743, 412 N.E.2d 908, 910 (1980) (where the focus of the non-bankruptcy suit is relief other than actual collection of the debt, the non-bankruptcy proceeding is not stayed because the order of that court will not interfere with the bankruptcy proceedings).

*Emporium Partnership* relied heavily on *In re Morton,* 866 F.2d 561, 564 (2d Cir.1989). In *In re Morton* the United States Court of Appeals for the Second Circuit held that the automatic stay provisions do not "prohibit acts to *extend, continue,* or *renew* otherwise valid statutory liens, nor is there any indication from the legislative history that congress intended such a result." *Id.* The federal appeals court explained that a lienholder's action to extend its lien under New York statute to avoid expiration of the lien

does not result in an enlargement of the lien, nor does it threaten property of the estate which would otherwise be available to general creditors. To the contrary, extension ... simply allows the holder of a valid lien to maintain the status quo—a policy not adverse to bankruptcy law, but rather in complete harmony with it.

*Id.* The court therefore concluded that the judgment holder's attempt to extend the lien did not violate the automatic stay. Significantly, *In re Morton* observed that if New York law provided that the only way to preserve the lien was to execute upon it within a certain time period, or if by extending the lien the amount of the lien could be enlarged or the priority of the lien could be enhanced, then a conflict with the automatic stay provisions of the bankruptcy code might arise. *Id.* The court further noted that extending the lien had no adverse effect on any party or property involved in the bankruptcy proceeding. *Id.*

We find the reasoning of these decisions to be both persuasive and applicable to the facts of the instant case. As we explained above, by its second Motion to Extend, appellant intended to do no more than prevent a lien from lapsing. Indeed, as in the cases outlined above, appellant was not attempting to enlarge the lien or threaten the property of the estate which would otherwise be available to general creditors. Rather, appellant desired to maintain the status quo. Appellant's action, therefore, was not violative of the automatic stay and did not require prior bankruptcy court approval.

We hold, therefore, that appellant was authorized to file the second Motion to Extend, and that the circuit court properly entertained that motion.

## II

Appellant's position below and on this appeal is that passage of the 120–day period contained in Rule 2–643(c)(6) and passage of the 120–day additional period granted by Judge Kahl's order extending writ of execution did not cause the levy to expire automatically and the property to be released automatically. On the other hand, appellee argues that the levy "died a natural death" upon the expiration of the 120–day time period contained in the order extending writ of execution. In other words, appellee contends that by the terms of that order, when appellant filed the second Motion to

Extend there was nothing for the circuit court to extend. We do not agree with appellee.

■ The only Maryland appellate case thoroughly discussing the operation of MARYLAND RULE 2–643(c)(6) is *Joshi v. Kaplan, Freeland, Schwartz & Bloomberg, P.C.,* 72 Md.App. 694, 532 A.2d 712 (1987). There, this Court held that, upon the passing of 120 days without sale of the property subject to the levy, a judgment debtor has the right to have the property released from the levy, unless the judgment creditor can demonstrate good cause for extending the levy. *Joshi,* 72 Md.App. at 699–700, 532 A.2d 712 (1987). Upon a determination that there is not good cause for extending the 120 period for sale of the attached property, it is mandatory for the trial judge to release the property from the levy. *Id.* at 699, 532 A.2d 712. It was in that context that we stated that a judgment creditor has a duty to sell property that is subject to a levy within 120 days. *Id.* at 697, 532 A.2d 712. This, of course, is consistent with the purpose of Rule 2–643(c)(6), which is to prevent undue delay by creditors' attorneys. *Id.* at 700, 532 A.2d 712.

■ In light of the plain language of Rule 2–643(c)(6), and *Joshi*'s construction of the rule, it is clear that upon the expiration of the 120–day period the levy does not automatically lapse or expire. Nothing in *Joshi* indicates that on the 121st day the levy "self-destructs." Rather, the passing of 120 days without the property being sold merely gives the judgment debtor the right to request the circuit court to terminate the levy.

Similarly, the levy does not automatically extinguish upon the expiration of an additional time period granted by the circuit court for "good cause" under Rule 2–643(c)(6). If this were the case, a judgment creditor would be unfairly foreclosed from demonstrating that good cause remained (or new and independent good cause had since arisen) for its continued inability to sell the property during the time extension. Thus, Judge Kahl's order extending the writ of execution did not

operate to extinguish the levy upon passage of the additional 120–day extension period.

In addition, a plain reading of the order extending the writ of execution supports our view. The pertinent part of that order reads as follows: "ORDERED, that the Writ of Execution levied in the above captioned matter shall be extended beyond the 120–day period contained in Rule 2–643(c)., [sic] *for an additional 120 days from the [e]xpiration thereof.*" (Emphasis added). From the italicized portion of the order, it is clear that Judge Kahl intended to give appellant an additional 120–day period during which time appellee would not be entitled to have the property released from the levy. Contrary to appellee's argument, there is nothing contained in the order indicating an intent by Judge Kahl that the levy automatically terminates upon passage of the additional 120–day period, thereby causing the property to be released from the levy by operation of law. Stated differently, the order extending the writ of execution operated in the same manner as Rule 2–643(c)(6). Thus, after the expiration of the additional 120–day period, appellee was free to assert its right to have the property released from the levy under Rule 2–643(c)(6)— which is precisely what appellee did by subsequently filing its motion to release the property from the levy. Significantly, it cannot reasonably be contended that the order authorized appellee, on the 121st day, to sell the property or deal with it as appellee desired without regard to appellant's interests.

Appellee cites *W.J. Jones & Son v. Independence Indem. Co.*, 52 Cal.App.2d 374, 126 P.2d 463 (Dist.Ct.1942) (cited in *Joshi*, at 701, 532 A.2d 712), for the proposition that the "writ had previously died a natural death." *W.J. Jones & Son*, however, is distinguishable from the instant case. There, the California court stated that a levy of execution does not bind property after one year from the issuance of its execution, and that upon the expiration of that one-year period the lien ended. *Id.* 126 P.2d at 466. Thus, in California, at least at the time of the *W.J. Jones & Son* case, a levy existing on property beyond one year did indeed expire. As we explained above, however, that is not the case in Maryland. *Joshi* relied

on *W.J. Jones & Son* for a completely different proposition—namely, that the judgment creditor could not take advantage of a bond that the circuit court unlawfully required the judgment debtor to post as a condition for the release of levied property under Rule 2–643(c)(6).

 As an aside, we note that, because the levy did not lapse upon the expiration of the 120–day period contained in the rule or upon the expiration of the additional 120–day period granted by Judge Kahl, appellant did not technically need to file a motion to extend the levy, so long as appellant was prepared to demonstrate that it had sufficient good cause for not selling the property subject to the levy in the event that appellee sought to release the property from the levy under Rule 2–643(c)(6). Indeed, Rule 2–643 does not specifically authorize a judgment creditor to request the circuit court to extend a levy based upon good cause. We, however, refuse to condemn appellant's decision not to "chance it," given some of our statements in *Joshi*.[6] Furthermore, we see no harm in allowing a judgment creditor to take the initiative and affirmatively request such an extension, without having to assume a defensive posture and wait for a judgment debtor to seek release of the property.

### III

 Having determined that the levy did not lapse upon the expiration of the 120–day extension period granted by Judge Kahl, the circuit court was required to order the property released from the levy, unless it determined that good cause existed for extending the writ under Rule 2–643(c)(6). Appellant argues that the trial judge erred in releasing the property

---

6. For example: "On the other hand, [the judgment creditor] had the duty to sell, within 120 days, the property that was subject to the levy. *See* Rule 2–643(c)(6). The Rules, however, do not permit the judgment creditor unilaterally to decide to extend the 120 day period awaiting the outcome of an appeal." *Joshi*, 72 Md.App. at 697, 532 A.2d 712. "That purpose [of Rule 2–643(c)(6) to curtail undue delay by creditors] is best served by requiring that judgment creditors comply with the timeframe prescribed in the rules." *Id.* at 700, 532 A.2d 712.

from the levy. In this regard, appellant maintains that good cause existed for extending the writ because appellant was precluded from selling the property due to the pending bankruptcy proceedings.

Preliminarily, we observe that the determination of good cause *vel non* is within the sound discretion of the trial court, and will not be disturbed on appeal unless the trial court has abused that discretion. *See In re Trevor A.*, 55 Md.App. 491, 494, 462 A.2d 1245 (1983) (review of a trial court's decision to extend for good cause a juvenile restitution hearing beyond thirty days after the disposition hearing is governed by the abuse of discretion standard). In *Stanford v. District Title Ins. Co.*, 260 Md. 550, 555, 273 A.2d 190 (1971), the Court of Appeals stated the following regarding good cause determinations:

> The decision to permit the redemption of a cause lost through delay involves subtle judgment, requiring the trial judge to balance the individual litigant's right to ultimately have his day in court against the public's paramount interest in insuring that all citizens can obtain a prompt resolution of conflicts while they still remain current. The primary focus of his inquiry should be on diligence and whether there has been a sufficient amount of it during an eighteen month period of inaction for the court to affirmatively conclude that the case should not be automatically dismissed. That decision, whatever it may be, rests in the sound discretion of the trial judge and we will only invade his province on appeal in extreme cases of clear abuse.

Good cause depends on the facts and circumstances of the case, and has been equated with "substantial reason." *In re Trevor A.*, 55 Md.App. at 496, 462 A.2d 1245. Good cause is a flexible term for dealing with unanticipated circumstances, which must be applied consistently with the fundamental purpose of the statute within which the term is employed. *Id.* (citations omitted).

In view of these principles and the facts and circumstances of this case, we hold that the circuit court abused its discretion

in determining that good cause did not exist to extend the writ pursuant to Rule 2–643(c)(6). The facts surrounding the procedural posture of this case dictate our holding.

 The property subject to the levy could not have been sold legally in the absence of an order from the bankruptcy court modifying the automatic stay. Appellant requested the bankruptcy court to allow appellant to proceed with the Writ of Execution, but the bankruptcy court denied this relief. The effect of the automatic stay and the bankruptcy court's refusal to allow appellant to sell the property subject to the levy clearly made it legally impossible for appellant to sell the property. We are satisfied that, under Rule 2–643(c)(6), there is sufficient good cause for extending a levy that "has existed for 120 days without sale of the property," where a judgment creditor, as in this case, has taken reasonable and diligent steps to have the levied property sold, but is legally precluded from doing so by an automatic bankruptcy stay and by an order of a bankruptcy court. The circuit court abused its discretion in finding otherwise.

Appellee, however, argues as follows:

[T]he record reveals that [appellant] repeatedly allowed months on end to pass by before it took any action in response to actions of [appellee] or rulings of the court. As an example, after receiving the trial court's order of 10 August 1994 [extending writ of execution], which specifically limited the period of extension to 12 August 1994, [appellant] did nothing for three (3) months [before filing the second Motion to Extend]. This lack of due diligence is equivalent to lack of good cause.

Appellee fails to suggest, and we are unable to determine, what action appellant could have legally taken to sell the property under the circumstances. We remind appellee that there was an automatic stay and bankruptcy court order preventing appellant from seizing and selling the property. Appellant had no choice but to wait patiently for the bankruptcy court proceedings to unfold.

Nonetheless, it appears that appellee is suggesting that appellant should have filed another motion to extend immediately before the expiration of the additional 120–day period granted by Judge Kahl's August 10, 1994 order extending writ of execution. As we noted above, according to appellant's calculations, that additional period expired, at the latest, on August 12, 1994, giving appellant only two days to take such action. Even if we were to assume that appellee's calculations in this regard are correct, appellee's argument is not persuasive. Because the order extending the writ of execution would not cause the levy to terminate naturally on August 12, 1994, appellant did not lack good cause in failing to file the second Motion to Extend immediately. In any event, appellant did file that motion in November 1994, three months after Judge Kahl's order. Under the specific circumstances of this case, and in light of the ambiguity of Judge Kahl's order, waiting three months was not a lack of good cause. Most significantly, appellee wants this Court to hold that waiting three months before filing the second Motion to Extend is tantamount to a lack of good cause, while simultaneously arguing that appellant was not even authorized to file the second Motion to Extend. In any event, neither Rule 2–643(c)(6) nor Maryland case law requires a judgment creditor to file a motion to extend a levy when the 120–day period comes to an end. In this case, however, appellant "played it safe" and decided to request an extension prior to a potential motion to release from appellee. We shall not, therefore, condemn appellant for not taking such non-mandatory measures immediately after the issuance of Judge Kahl's order extending writ of execution.

Additionally, we reject appellee's argument that, in deciding whether good cause existed, the circuit court was free to consider the fact that the bankruptcy court denied appellant's request to proceed with the execution of the writ. We fail to see how this is a factor that could demonstrate appellant's lack of good cause. From the bankruptcy court's decision to maintain the status quo and not to modify the stay in this regard, it is impossible to draw any inference that appel-

lant lacked good cause for not selling the property. If anything, just the opposite inference could be drawn from the bankruptcy court's order modifying stay. Significantly, that order, in addition to denying appellant's request to proceed with the writ and allowing appellant to request the circuit court to extend the writ, ordered that appellee "continue to maintain adequate insurance on all of its machinery and equipment and leasehold equipment . . . and . . . shall cause its insurance company to issue an endorsement naming [appellant] as an additional insured on said policy to the extent of its secured claim herein." This portion of the order modifying stay, therefore, clearly indicates that the bankruptcy court intended that appellant's interest in the property remain protected.

We further reject appellee's argument that appellant's "receipt of $10,000 from [appellee] against property appraised by the Sheriff for only $15,000 . . . was sufficient in itself for the trial court to believe that [appellant] received full value for its writ and to deny the extension." Appellee seems to suggest that, by paying appellant an amount of money equal to the full value of the levied property, appellant is entitled to have the property released. In this regard, appellee contends that it is unfair for appellant to receive $10,000 in cash *and* be permitted to retain its levy on the property. This, according to appellee, allows appellant "a second bite at the apple."

This argument evidences a fundamental misunderstanding of appellee's position as a judgment debtor. Obviously, if appellee paid appellant the full amount of the *judgment* with costs and interests, there would not be good cause to extend the writ, and the property would have to be released. *See* MD.RULE 2–643(a) ("Property is released from a levy when the judgment has been entered as satisfied . . .") & (c)(1) ("the court may release some or all of the property from a levy if it finds that . . . the judgment . . . has been satisfied"). Appellee, however, has not satisfied the judgment. Rather, appellee has (to the extent of $10,000) only partially satisfied the judgment. Just because appellee made a $10,000 payment

that may happen to approximate what appellee believes to be the actual value of the levied property does not mean that the property should then be released from the levy. Appellee cannot have its property released from a levy merely by paying the creditor an amount of money equal to the value of the property, where that amount is short of satisfying the full judgment amount.

Finally, we reject appellee's argument that good cause was absent because the circuit court could have found (based on appellee's counsel's assurances during the motions hearing) that appellant's position as a creditor would have allegedly suffered only slightly as a result of the release of the property. In its brief, appellee states in a footnote that appellant, "as the majority unsecured creditor, would suffer little actual loss." Simply stated, appellant's position as compared to appellee's other creditors is not relevant to whether appellant had a good cause reason for not selling property within 120 days of the property being levied. Additionally, the harm that appellant may suffer as a result of changing appellant's position as a lien creditor and allowing appellee to use the property in its reorganization is more appropriately a matter of concern for the bankruptcy court.

Based on the foregoing, we hold that the circuit court abused its discretion in failing to determine that good cause existed to extend the levy under the circumstances of this case. The judgment is, therefore, reversed and the case remanded to the circuit court with instructions to reinstate the levy on the property in accordance with our holding. For future guidance, we note that in the event appellant fails to proceed diligently with the Writ of Execution and cause the levied property to be sold within a reasonable time after having become legally authorized to do so (for whatever reason, including but not limited to termination of the bankruptcy proceedings, or modification of the automatic stay), appellee may present the circuit court with a motion to release the property from the levy pursuant to Rule 2–643(c)(6). Consistent with this opinion and our opinion in *Joshi*, the

circuit court must grant such a motion, unless appellant successfully demonstrates good cause for a further extension. We finally note that our holding only relates specifically to the release of the property from the levy under Rule 2–643(c)(6).

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**