**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

STEPHEN M. FLATOW,
Plaintiff-Appellant,

v.

THE ALAVI FOUNDATION,
Movant-Appellee,

and

THE ISLAMIC REPUBLIC OF IRAN; THE
IRANIAN MINISTRY OF
INFORMATION AND SECURITY; ALI
HOSEINI AYATOLLAH ALI HOSEINI
KHAMENEI; ALI AKBAR HASHEMI-
RAFSANJANI; ALI FALLAHIAN-
KHUZESTANI; JOHN DOES, 1-99,
Defendants.

No. 99-2409

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CA-98-4152-AW, MISC-98-285)

Argued: June 6, 2000

Decided: July 24, 2000

Before WILKINSON, Chief Judge, MURNAGHAN, Circuit Judge,
and Henry M. HERLONG, Jr., United States District Judge
for the District of South Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Thomas Fortune Fay, THOMAS FORTUNE FAY, P.C., Washington, D.C., for Appellant. John D. Winter, PATTERSON, BELKNAP, WEBB & TYLER, L.L.P., New York, New York, for Appellee. **ON BRIEF:** Noah H. Charlson, PATTERSON, BELKNAP, WEBB & TYLER, L.L.P., New York, New York; Patrick James Attridge, KING & ATTRIDGE, Rockville, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Stephen M. Flatow ("Flatow") appeals the district court's order granting the Alavi Foundation's ("Foundation") Motion to Release Properties from Levy, to Quash Writs of Execution, and to Enjoin Plaintiff from Issuing Future Writs Against the Foundation's Property. Flatow seeks to levy against real property of the Foundation in order to satisfy a judgment obtained in a prior action against the Islamic Republic of Iran ("Iranian Government"). Although the Foundation was not a party to the prior action, Flatow claims that the Foundation is a "front" for the Iranian Government and that its property therefore is subject to levy in satisfaction of his judgment. For the reasons below, we affirm the decision of the district court.

I.

Flatow's daughter, Alisa Flatow, was killed in 1995 in the Gaza Strip when a terrorist bomb exploded. In March 1998, Flatow obtained a judgment of $247,513,220.00 against the Iranian Government in federal district court pursuant to the "extrajudicial killing" exception to foreign sovereign immunity. See Foreign Sovereign

2

Immunities Act ("FSIA"), 28 U.S.C.A. § 1605(a)(7) (West Supp. 2000); Flatow v. Islamic Republic of Iran, 999 F. Supp. 1 (D.D.C. 1998). The instant litigation involves an attempt to satisfy this judgment by proceeding against three real properties that are owned by the Foundation and located in the state of Maryland. The Foundation's purpose is to support charitable, philanthropic, and religious causes. It purchased the subject properties in 1981 and 1984, and they are used by the Islamic Education Center and the Muslim Community School.

On October 7, 1998, Flatow requested the United States District Court for the District of Maryland issue writs of execution against the subject properties. On October 13, 1998, the district court issued writs of execution directing the United States Marshal to levy upon the properties. These writs were served on November 9, 1998. On November 30, 1998, the Foundation moved to release the properties from levy, quash the writs of execution, and enjoin the issuance of future writs. The district court granted the motion on September 7, 1999. See Flatow v. Islamic Republic of Iran, 67 F. Supp. 2d 535 (D. Md. 1999).

Flatow claims that the district court erred when it denied him an evidentiary hearing and when it determined that Flatow could not levy against assets of the Foundation in order to satisfy his judgment against the Iranian government. We disagree.

II.

First, Flatow claims that the court erred in not granting him an "evidentiary hearing." As a preliminary matter, the court notes that Rule 69 of the Federal Rules of Civil Procedure dictates that state law and procedures control proceedings on writs of attachment in aid of execution. See Fed. R. Civ. P. 69. Therefore, the court must look to Maryland's procedural rules, which provide separately for writs of execution and for writs of garnishment. See Md. R. Civ. P. 2-641 to 644 (execution); id. 2-645 (garnishment).

The sole basis for Flatow's claim is that Maryland Rule 2-645 requires the matter to "proceed as if it were an original action." Id. 2-645(g) ("If a timely reply is filed to the answer of the garnishee, the

3

matter shall proceed as if it were an original action between the judgment creditor as plaintiff and the garnishee as defendant and shall be governed by the rules applicable to civil actions."). Proceeding as if it were an original action, argues Flatow, the district court should have followed Maryland's summary judgment procedure. By failing to follow this procedure, Flatow claims that the district court erred when it weighed the evidence and failed to resolve inferences in his favor.

The court need not examine Maryland's summary judgment procedure because Maryland Rule 2-645 does not apply to Flatow's claim. Although Flatow seeks to avail himself of Rule 2-645, which governs garnishment, the district court found that Flatow proceeded pursuant to a writ of execution rather than a writ of garnishment. We agree.

Rule 2-641 instructs a judgment creditor how to "request" a writ of execution, and Rule 2-645 instructs a judgment creditor how to "request" a writ of garnishment. See id. 2-641, 645. Flatow's request was captioned "Request of Plaintiff for Issuance of a Writ of Execution," and it specifically asked the clerk to "[p]lease issue a Writ of Execution." J.A. 12. The clerk then issued a "writ of execution" that stated its execution was to "be in accordance with Md. Rule 2-642." Id. at 18-19. Maryland Rule 2-642 provides instructions for the sheriff with respect to levying upon property that is the subject of a writ of execution. See Md. R. Civ. P. 2-642. Therefore, this case is before us by virtue of a writ of execution, not a writ of garnishment.

Consequently, the district court was not bound by Rule 2-645's mandate to proceed as though the matter were an original action. Instead, the court was bound by Maryland procedure governing writs of execution. Rule 2-643 governs the procedure for releasing a property from levy once a writ of execution has been issued, and unlike Rule 2-645, Rule 2-643 does not provide for the matter to proceed as an original action. Instead, it provides that either the judgment debtor or a third party that claims an interest in the property may file a motion requesting the property be released from levy. See id. 2-643(c), (e). Upon such a motion, "the court may release some or all

4

of the property from a levy if it finds [one of six enumerated conditions]." Id. 2-643(c).**1**

It is not evident on the face of Rule 2-643 whether it requires an "evidentiary hearing" as demanded by Flatow. The Maryland Court of Special Appeals has stated that "Maryland Rule 2-643 [does not] explicitly address[ ] . . . the procedure to be followed once the motion has been filed." Barry Properties Inc. v. Blanton & McCleary, 525 A.2d 248, 254 (Md. Ct. Spec. App. 1987). We recognize that Rule 2-643 grants a requesting party the right to a prompt "hearing" pursuant to Rule 2-311(f) if requested. See Md. R. Civ. P. 2-643(f) ("A party desiring a hearing on a motion filed pursuant to this Rule shall so request pursuant to Rule 2-311(f) and, if requested, a hearing shall be held promptly."). A hearing pursuant to Rule 2-311(f), however, is not the full-blown evidentiary hearing that Flatow seeks.

Under Rule 2-311(f), "parties [are] entitled to an oral hearing" and "to adequate notice of the time, place, and nature of that hearing, so that they [can] adequately prepare." Phillips v. Venker, 557 A.2d 1338, 1343 (Md. 1989). The purpose of the hearing "is to prevent a final disposition -- one that removes a claim or a defense -- unless the losing party has had a chance to argue on the record and to prevent the court from ruling incorrectly." Adams v. Offender Aid & Restoration of Baltimore, Inc., 691 A.2d 248, 250 (Md. Ct. Spec. App. 1997). In addition, Rule 2-643(f) requires the oral hearing to be held "promptly." Md. R. Civ. P. 2-643(f).

_____

**1** The six enumerated conditions of Maryland Rule 2-643(c) are:

> (1) the judgment has been vacated, has expired, or has been satisfied, (2) the property is exempt from levy, (3) the judgment creditor has failed to comply with these rules or an order of court regarding the enforcement proceedings, (4) property sufficient in value to satisfy the judgment and enforcement costs will remain under the levy after the release, (5) the levy upon the specific property will cause undue hardship to the judgment debtor and the judgment debtor has delivered to the sheriff or made available for levy alternative property sufficient in value to satisfy the judgment and enforcement costs, or (6) the levy has existed for 120 days without sale of the property, unless the court for good cause extends the time.

5

The purposes and mandatory promptness of the "oral hearing" requirement under Rules 2-643(f) and 311(f) belie Flatow's claim that the court erred in not providing him the opportunity to conduct discovery and to present evidence at an "evidentiary hearing." Because Flatow was promptly given the opportunity to argue before the district court at an oral hearing, we conclude that Maryland's procedural requirements were satisfied. Therefore, the district court did not err in declining to grant an "evidentiary hearing."**2**

We further conclude that the district court was not in error when it weighed the evidence presented by Flatow and declined to resolve inferences in his favor. In W.D. Curran & Assoc., Inc. v. Cheng-Shum Enters., 667 A.2d 1013 (Md. Ct. Spec. App. 1995), a Maryland circuit court was faced with determining whether it should release property from levy. Under Maryland Rule 2-643(c), the trial court may release property from levy if it "finds that . . . the levy has existed for 120 days without sale of the property, unless the court for good cause extends the time." Md. Rule 2-643(c)(6). The levy had already been extended for one 120-day period, and the circuit court determined that there was no good cause to extend it again. See Cheng-Shum, 667 A.2d at 1016. The Maryland Court of Special Appeals reviewed this determination for abuse of discretion. See id . at 1020 ("[T]he determination of good cause vel non is within the sound discretion of the trial court, and will not be disturbed on appeal unless the trial court has abused that discretion.").

We see no distinction between the state circuit court's determination under Rule 2-643(c)(6) and the district court's determination in the instant case. Accordingly, the district court's determination must not be disturbed unless it abused its discretion. Because it was within the discretion of the district court to determine whether Flatow could demonstrate a factual basis for subjecting the Foundation's property to levy, the district court did not err when it weighed the evidence and declined to draw factual inferences in the Foundation's favor.

_____

**2** We note that the district court allowed Flatow to present a substantial amount of evidence, including affidavits, newsletters from Iran, and IRS documents. Therefore, Flatow did have the opportunity to forecast his evidence.

III.

Second, Flatow argues that the district court erred in its determination that property titled in the name of the Foundation was not subject to a writ of execution in order to satisfy Flatow's judgment against the Iranian Government. We review the district court's determinations of law de novo. See Tabion v. Mufti, 73 F.3d 535, 537 (4th Cir. 1996). We review the district court's factual findings under Maryland Rule 2-643 for abuse of discretion. Cheng-Shum, 667 A.2d at 1020.

Flatow's judgment against the Iranian Government was obtained pursuant to the "extrajudicial killing" exception to the FSIA. See 28 U.S.C.A. § 1605(a)(7) (West Supp. 2000). In an effort to enforce this judgment, Flatow claims that the Foundation is an agency or instrumentality of the Iranian Government and therefore that the Foundation's property is subject to levy either by virtue of section 1610 of the FSIA or by virtue of equitable principles as announced by the United States Supreme Court in First National City Bank v. Banco Para El Commercio Exterior de Cuba, 462 U.S. 611 (1983) ("Bancec").

A.

First, Flatow contends that sections 1610(a), (b), and (f)(1)(A) of the FSIA allow him to proceed against the three subject properties. Although Rule 69(a) of the Federal Rules of Civil Procedure provides that "[t]he procedure on execution . . . shall be in accordance with the practice and procedure of the state in which the district court is held," the rule also provides that "any statute of the United States governs to the extent that it is applicable." Fed. R. Civ. P. 69(a). Moreover, if the Foundation is the agent or instrumentality of the Iranian Government, then the FSIA is the sole basis for gaining jurisdiction over it. See Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 443 (1989) ("[T]he FSIA provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country."). Therefore, it is appropriate to look to the FSIA.

Section 1609 of the FSIA provides that a foreign state's property within the United States is immune from execution or attachment. See 28 U.S.C.A. § 1609 (West 1994). Section 1610(a)(7), however, pro-

7

vides that a foreign state's property located in the United States and used for a commercial purpose is not immune from execution in satisfaction of a judgment under section 1605(a)(7). See id. § 1610(a)(7) (West Supp. 2000).**3** Section 1610(b) provides the same for property of an agency or instrumentality of a foreign state. See id. § 1610(b).**4** In addition, section 1610(f)(1)(A) provides that certain restricted assets of a foreign state or its instrumentalities are subject to execution in satisfaction of a judgment under section 1605(a)(7). See id. § 1610(f)(1)(A).**5**

Because the Foundation is neither a foreign state nor an agency or instrumentality of a foreign state as defined by the FSIA, none of these enforcement provisions of the FSIA are availing to Flatow. The FSIA defines a "foreign state" to include"a political subdivision of

---

**3** Section 1610(a) provides in pertinent part:

> [P]roperty in the United States of a foreign state . . . used for a commercial activity in the United States, shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States . .. if . . . the judgment relates to a claim for which the foreign state is not immune under section 1605(a)(7), regardless of whether the property is or was involved with the act upon which the claim is based.

**4** Section 1610(b) provides in pertinent part:

> [A]ny property in the United States of an agency or instrumentality of a foreign state engaged in commercial activity in the United States shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States . . . if . . . the judgment relates to a claim for which the agency or instrumentality is not immune by virtue of section 1605(a) . . . (7) . . . regardless of whether the property is or was involved in the act upon which the claim is based.

**5** Section 1610(f)(1)(A) provides in pertinent part:

> [A]ny property with respect to which financial transactions are prohibited or regulated pursuant to [various acts] shall be subject to execution or attachment in aid of execution of any judgment relating to a claim for which a foreign state (including any agency or instrumentality or such state) claiming such property is not immune under section 1605(a)(7).

8

a foreign state or an agency or instrumentality of a foreign state." Id. § 1603(a) (West 1994). The FSIA further defines an "agency or instrumentality of a foreign state" as any entity:

> (1) which is a separate legal person, corporate or otherwise, and
>
> (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
>
> (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country.

Id. § 1603(b).

Because the Foundation is not the Iranian Government itself or a political subdivision thereof, it can only be considered a "foreign state" if it is an "agency or instrumentality of a foreign state" as defined in the Act. The Foundation is a not-for-profit corporation under the laws of the State of New York. Because the Foundation is "a citizen of a State of the United States" under section 1332(c), it cannot meet the third prong of the definition of an "agency or instrumentality of a foreign state." See id. § 1603(b)(3). Therefore, Flatow cannot prevail under the enforcement provisions of sections 1610(a), (b), and (f)(1)(A).

B.

Although foreclosed from proceeding under section 1610, Flatow contends that the Foundation's property is subject to levy by virtue of equitable principles as announced by the United States Supreme Court in Bancec. In Bancec the Supreme Court determined that instrumentalities of a foreign state may be held substantively liable for the debts of their related foreign sovereign when equity so requires. The Court initially noted that "duly created instrumentalities of a foreign state are to be accorded a presumption of independent sta-

9

tus." See Bancec, 462 U.S. at 627. The Court found, however, that this presumption may be overcome. Although the Court declined to announce a "mechanical formula for determining the circumstances under which the normally separate juridical status of a government instrumentality is to be disregarded," id. at 633, it stated that two of the circumstances would be (1) when the government entity "is so extensively controlled by [the foreign state] that a relationship of principal and agent is created," or (2) when recognizing the presumption "`would work fraud or injustice,'" id. at 629 (quoting Taylor v. Standard Gas Co., 306 U.S. 307, 322 (1939)).

The basis for the Bancec Court's decision was not the FSIA, as the Court noted that the FSIA does not govern substantive liability of foreign states or their instrumentalities. See id. at 620. Instead, the decision was "the product of the application of internationally recognized equitable principles to avoid . . . injustice." Id. at 633. Applying these equitable principles, the Bancec Court held that an American defendant who was sued in federal district court by an instrumentality of the Cuban government could apply a setoff of the value of its assets that had been seized by the Cuban government. See id. at 613.

Flatow claims that the district court erred when it declined to disregard the separate juridical status of the Foundation under the principles of Bancec.[6] The first circumstance specified by the Bancec Court is when the instrumentality "is so extensively controlled" by the foreign state "that a relationship of principal and agent is created." Id. at 629. Courts interpreting this language have focused on whether the foreign state controlled the day-to-day operations of the entity at issue. See, e.g., McKesson Corp. v. Islamic Republic of Iran, 52 F.3d 346, 352 (D.C. Cir. 1995) ("This extensive involvement in the day-to-day operations of Pak Dairy is evidence of a principal/agent relation-

_____

[6] We note that Bancec's presumption of separateness applies to "duly created instrumentalities of a foreign state." Bancec, 462 U.S. at 627. It is not immediately apparent whether Bancec applies when the alleged instrumentality is not a creation of the related foreign government, but instead is a New York not-for-profit corporation. Nevertheless, we need not resolve this issue today because (1) neither party has claimed that it was error for the district court to apply Bancec, and (2) as discussed below, Bancec does not provide relief even if it is applicable.

10

ship between Iran and Pak Dairy." (internal quotations omitted)); Hester Int'l Corp. v. Federal Republic of Nigeria , 879 F.2d 170, 178-81 (5th Cir. 1989) (honoring presumption where the evidence did "not demonstrate that the Federal Government was involved in the day-to-day management" of the instrumentality); Baglab Ltd. v. Johnson Matthey Bankers Ltd., 665 F. Supp. 289, 297 (S.D.N.Y. 1987) (honoring presumption where there was no "general control over the day-to-day activities" of the instrumentality).

The district court correctly applied this same standard in the instant case. Flatow argues that the district court should have departed from the day-to-day control standard and applied a more lenient "owner-ship" standard, but he never explains exactly what the "ownership" standard entails. Moreover, he provides no persuasive legal basis for departing from the familiar day-to-day control standard. Flatow attempts to distinguish the above cases that adopted the day-to-day standard by arguing that they arose under the "commercial activity" exception to sovereign immunity set out in 28 U.S.C.§ 1605(a)(2) as opposed to the "extrajudicial killing" exception in section 1605(a)(7). Flatow contends that the equities are different when the judgment is pursuant to subsection (a)(7) and that Bancec consequently authorizes disregarding the separate status of the foreign government's instru-mentalities. Flatow also contends that the post-Bancec enactment of subsection (a)(7) and its related enforcement provisions indicate Con-gress's intention for Bancec's presumption to be overcome more readily.

We are unpersuaded. Flatow seemingly would have the court hold any third party that has any connection with Iran responsible for the judgment he has obtained against the Iranian Government. As the Second and Eleventh Circuits have already noted, however, the Ban-cec presumption should not easily be overcome. See Alejandre v. Telefonica Larga Distancia de Puerto Rico, Inc., 183 F.3d 1277, 1287 (11th Cir. 1999) ("Allowing the Bancec presumption of separate juridical status to be so easily overcome would effectively render it a nullity."); Letelier v. Republic of Chile , 748 F.2d 790, 795 (2d Cir. 1984) ("[B]oth Bancec and the FSIA legislative history caution against too easily overcoming the presumption of separateness.").

The presumption serves important goals, including promoting eco-nomic development in foreign countries, protecting third-party credi-

11

tor rights, and encouraging foreign governments to respect juridical divisions between corporations in the United States. See Bancec, 462 U.S. at 625-28. Thus, there must be some principled basis to overcome Bancec's longstanding presumption respecting juridical independence. The day-to-day control test serves the goals of the presumption as well as the goal of providing a remedy to victims of extrajudicial killings carried out by terrorist nations.

Moreover, "[i]t is firmly entrenched that Congress is presumed to enact legislation with knowledge of the law; that is with the knowledge of the interpretation that courts have given to an existing statute." See United States v. Langley, 62 F.3d 602, 605 (4th Cir. 1995). Consequently, we decline to interpret the enactment of section 1605(a)(7) and its enforcement provisions as expressing an intention on the part of Congress to overrule Bancec. Therefore, the district court applied the correct standard in determining whether the Iranian Government so extensively controlled the Foundation that a relationship of principle and agent was created.

Finally, the district court did not err in declining to disregard the Foundation's independence on the second circumstance noted by the Bancec Court -- when honoring the presumption would result in fraud or injustice. Although Bancec provides that it may be appropriate to hold a foreign government's instrumentality liable under such a circumstance, it would be an equal if not greater injustice to allow Flatow to levy against the property of an independent New York not-for-profit corporation in order to satisfy a judgment against the Iranian Government without a sufficient connection between the two. As discussed above, the necessary connection is day-to-day control by the Iranian Government. Flatow has not shown such control. Therefore, Flatow cannot prevail on this basis.

In conclusion, the district court correctly applied the day-to-day control standard in evaluating whether the Iranian Government so controlled the Foundation that a principal-agent relationship was created. Furthermore, the court did not abuse its discretion in determining that the evidence before it did not support a finding of day-to-day control. Finally, the district court did not err by refusing to disregard the Bancec presumption on the basis of avoiding fraud or injustice.

12

IV.

Accordingly, the decision of the district court is

<u>AFFIRMED</u>.

13